**CITADEL CORPORATION,**
Plaintiff, Appellant,

v.

**PUERTO RICO HIGHWAY AUTHORI-TY, et al., Defendants, Appellees.**

No. 82–1395.

United States Court of Appeals,
First Circuit.

Argued Oct. 4, 1982.

Decided Dec. 22, 1982.

Rehearing Denied Feb. 2, 1983.

Robert H. Rout, Lakeville, Conn., for plaintiff, appellant.

Marta Quinones de Torres, Asst. Sol. Gen., San Juan, P.R., with whom Miguel Pagan, Acting Sol. Gen. and Americo Serra, Asst. Sol. Gen., Dept. of Justice, San Juan, P.R., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, TIMBERS, Senior Circuit Judge,* and BOWNES, Circuit Judge.

PER CURIAM.

In a prior action, the District Court for the District of Puerto Rico enjoined various officials of the Commonwealth of Puerto Rico from depriving appellant Citadel Corporation of its property in contravention of the Fifth Amendment (*Citadel I*). The court in that case, however, denied appellant's claim for damages. In this second action, appellant seeks monetary relief for injuries arising out of the same events, but in this action relief is sought from governmental entities not joined as defendants in the first action. The district court dismissed the instant action on the ground of collateral estoppel, holding that the issues in *Citadel I* and *Citadel II* were identical.[1]

We agree that the instant action should be dismissed, but on the ground of failure to state a claim cognizable in a federal court, rather than on the ground of collateral estoppel.

---

* Of the Second Circuit, by designation.

1. *Citadel Corp. v. Puerto Rico Highway Authority (Citadel II)*, No. 79–733 (D.P.R. March 23, 1982).

2. The motion to join additional defendants was filed more than two years after plaintiff commenced the action. *Citadel Corp. v. Rafael*

## I.

### COLLATERAL ESTOPPEL CLAIM

The district court in the instant case held that *Citadel I* laid appellant's claims to rest. Appellant had based its first action directly on the Taking Clause of the Fifth Amendment, incorporated in the Fourteenth Amendment, as well as on 42 U.S.C. § 1983 (1976). That action sought damages and an injunction enjoining the allegedly unconstitutional "freeze" on its property. Governmental agencies had planned to build a highway in the vicinity of appellant's property. In the mid 1960's these agencies proscribed further development on property situated in the path of the proposed highway. Some ten years later, however, plans had not been finalized nor had money been allotted for the construction. The district court in the first action held a full bench trial on appellant's claims. The court decided in favor of appellant on all but the claim for damages. Neither side appealed from the final judgment, although appellant's motion before trial to join additional defendants, including the defendants in the instant action, had been denied on the ground that it was not timely.[2]

Appellant commenced this second action against the Commonwealth of Puerto Rico, the Puerto Rico Highway Authority, and the Puerto Rico Land Authority while the first action was pending.[3] Appellant makes no claim that it did not receive a fair opportunity to litigate its case fully in *Citadel I*. The district court held that *Citadel I* precluded appellant from relitigating the same issues in *Citadel II*. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331–33 (1979). Although the factual issues may have been

*Hernandez Colon (Citadel I)*, No. 76–1159 (D.P.R. Jan. 8, 1979) (order denying motion to add defendants).

3. Appellant filed the second complaint commencing the instant action on March 19, 1979, apparently not including the individual defendants it had attempted to join in *Citadel I*.

identical, defendants' different identities in the two actions make reliance on collateral estoppel inappropriate.

While the traditional mutuality requirement for issue preclusion has been relaxed, e.g., *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 332–37 (1971), affirmative use of collateral estoppel by a nonparty still must be premised on the identity of issues in the two actions. *See generally* Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, 1977). Appellees have not demonstrated that the issue of defendants' liability in *Citadel II* is the same as that in *Citadel I.* The district court in the first action may have declined to award damages against the defendant public officials for any number of reasons that would not immunize the governmental entities in the second action. The district court's failure in *Citadel I* to specify its grounds for denying damages makes this likely. The issue of the governmental entities' liability for alleged unconstitutional action not having been litigated, collateral estoppel does not bar appellant's second action. The critical question therefore is whether appellant has asserted a cognizable theory that would render the governmental entities liable for damages. We turn now to a consideration of this question.

## II.

## ABSENCE OF A CLAIM COGNIZABLE IN A FEDERAL COURT

■ We held in *Pamel Corp. v. Puerto Rico Highway Authority,* 621 F.2d 33 (1st Cir.1980), that damage actions against governmental entities stemming from land use policies were not cognizable in a federal court. Plaintiff in *Pamel,* like appellant in the instant case, sought damages equivalent to the value of property allegedly "taken" as a result of the restrictive zoning policies of the Puerto Rico Highway Authority. *Id.* at 34. We characterized plaintiff's claim in *Pamel* as an inverse condemnation action, i.e., an action seeking fair compensation for the government's alleged unconstitutional extinguishment of plaintiff's property rights. While recognizing that "[r]egulation of property use may be so oppressive or arbitrary that it crosses the wavering line separating a valid exercise of the police power from an exercise of the eminent domain power", *id.* at 35, we determined that the proper remedy in such a case was not the awarding of the value of the diminished property right. There are strong policy arguments against any court requiring the state to purchase the property over which it has imposed excessive regulation. *See* Note, Inverse Condemnation: Its Availability in Challenging the Validity of a Zoning Ordinance, 26 Stan.L.Rev. 1439, 1452 (1974). Those arguments are even stronger when the court is a federal one. As we stated in *Pamel:*

"[f]ederal enforcement of the inverse condemnation remedy would be a singularly inappropriate intrusion into the states' traditional domains of property law and land use policy. The federal constitutional right can be secured to the individual without forcing the state to purchase his property. Voiding the offending restriction will make the owner whole. Moreover, once the constitutional line has been drawn, the state or local authority administering the complex structure of land use controls should be free to decide whether the expected benefits from the restriction are worth the cost of the required compensation."

621 F.2d at 36 (citations omitted).[4]

■ Appellant invites us to limit *Pamel* to situations in which plaintiffs challenge

---

4. Since our decision in *Pamel,* the Supreme Court has decided *San Diego Gas & Electric Co. v. City of San Diego,* 450 U.S. 621 (1981). It appears that at least eight of the Justices may disagree with our unwillingness to characterize oppressive regulation as a taking, *see* 450 U.S. at 628 n. 8; *id.* at 651–53 (Brennan, J., dissenting), but only four would find that such a taking requires compensation, *see id.* at 653–58 (Brennan, J., dissenting). It may be that Justice Rehnquist's concurrence should be taken as a fifth vote in favor of compen-

an invalid zoning restriction. We decline the invitation. Under appellant's theory, *Pamel* would be inapplicable to the case at hand in which appellant alleges an unconstitutional deprivation due to wrongful conduct by governmental officials. The distinction is not persuasive. Whether the conduct is negligent or not, the gravamen of the inverse condemnation claim remains the unconstitutional deprivation of property. Resort still can be made to a tort action in the state courts. The governmental freeze on appellant's property is sufficiently similar to the restrictive zoning in *Pamel* to bring this case within our holding in *Pamel.* Both cases involve allegations that state governmental agencies unconstitutionally deprived plaintiffs of property through land use controls.[5] Federal courts may enjoin such unconstitutional conduct on the part of states in an inverse condemnation proceeding, but they may not award damages. The Commonwealth of Puerto Rico's unconstitutional "freeze" on appellant's property therefore does not subject the governmental entities to an action for damages in a federal court.

We affirm the judgment of the district court dismissing the instant action, but we do so on the grounds stated in this opinion.

*Affirmed.*

sation, *see id.* at 633–34 (Rehnquist, J., concurring), but deriving enough direction from his brief comment in support of "much of what is said" by Justice Brennan to abandon our position that the constitution does not require compensation in this case seems to be carrying judicial tea leaf reading to an uncalled-for extreme. In any event, none of the Justices addressed the issue of federal court ordered compensation, since the lower court in *San Diego Gas* was a state court. Even if the constitution is read to require compensation in an inverse condemnation case, the Eleventh Amendment should prevent a federal court from awarding it. *See Quern v. Jordan,* 440 U.S. 332 (1979); *Edelman v. Jordan,* 415 U.S. 651 (1974); *Knight v. State of New York,* 443 F.2d 415 (2d Cir.1971); *Beck v. State of*

*California,* 479 F.Supp. 392 (C.D.Cal.1979); *Nasralah v. Barcelo,* 465 F.Supp. 1273 (D.P.R. 1979).

5.  Arguably, *Pamel* might be distinguished on the ground that there the cause of action was based on 42 U.S.C. § 1983, while the instant case also is based directly on a violation of the Fourteenth Amendment. We find such distinction not dispositive. The same concerns which impel the result in the § 1983 context likewise should govern in a *"Bivens"* action. *Cf. Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 712–13 (1978) (Powell, J., concurring) (liability of municipality should be the same whether predicated on § 1983 claim or implied from the Fourteenth Amendment).