Adela **MARTINEZ, and the heirs of Miguel Gonzalez–Avila, Ramona Gonzalez–Kjeldsen, Rosa Gonzalez–Garay, Adela Martinez–Romero, Carmen Georgina Gonzalez–Martinez, Maria Adelaida Gonzalez–Martinez, Maria Miguelina Gonzalez–Martinez, Hadla Luz Gonzalez–Martinez, Plaintiffs,**

**v.**

**JUNTA de PLANIFICACION de PUERTO RICO, Patria G. Custodio, Lina M. Dueño, Luis E. Rivera, Junta de Desarrollo Y Conservacion de Culebra, Francisco Bermudez, Executive Director, Defendants.**

**Civ. No. 86–0826CC.**

United States District Court, D. Puerto Rico.

April 30, 1990.

---

Rafael González–Vélez, Hato Rey, P.R., for plaintiffs.

Héctor Rivera–Cruz, Secretary of Justice, Com. of Puerto Rico by Carlos E. Rodríguez–Quesada and Ricardo L. Torres–Muñoz, San Juan, P.R., for defendants.

## OPINION AND ORDER

CEREZO, District Judge.

This is yet another case brought under 42 U.S.C. § 1983 in which the validity of certain zoning regulations of the Commonwealth of Puerto Rico are attacked as unconstitutional. Plaintiffs are the owners of a parcel of land located in the offshore island of Culebra. Defendants are the Puerto Rico Planning Board, the Culebra

Conservation and Development Authority, and various present and former members of both governmental entities. Presently before the Court are defendants' motion for summary judgment (docket entry 25) and accompanying memoranda (dockets entries 27 and 30) and the opposition filed thereto (docket entry 32), together with plaintiffs' motion requesting leave to file an amended complaint (docket entry 31), which was also tendered.

The property involved in this litigation, as described in the Commonwealth's Property Registry, is composed of some keys situated in the southern part of the island of Culebra. Colloquially known as "Finca Los Cayos", its total land area is fifteen (15) hectares. Although until the beginning of the century it was publicly owned, since 1902 it has been in private hands. It was acquired by Miguel González–Avila and his wife, plaintiff Adela Martínez on September 25, 1952, and since then they have been the registered owners. All the remaining plaintiffs are the heirs of Mr. González–Avila.

In May 27, 1976, and as a result of the adoption the previous year of a comprehensive land use plan and zoning map for Culebra by the Planning Board, plaintiffs' property was classified "P", a form of zoning that prevents property from being used other than for public purposes.[1] According to plaintiffs' allegations, admitted by defendants, the consequence of this classification was that their property could neither be sold nor mortgaged. They further aver that, with all the limitations in its use, the property was in fact rendered useless.

In the early 1980's plaintiffs learned of the existence of a claim of interest of the United States in their property. In what was an apparent mixup, the United States Fish and Wildlife Service claimed that the property in question belonged to them as part of a transfer of lands previously made by the United States Navy on or about 1980. The intention of the Service was, in turn, to transfer these lands to the Commonwealth of Puerto Rico. Although plaintiffs attempted to solve this dispute by administrative channels, nothing favorable had been accomplished by the middle of the decade.

Amidst the questioning of their property right by the United States government, and the severe limitations in its use mandated by the zoning regulations adopted by the Commonwealth of Puerto Rico, plaintiffs filed this action under 28 U.S.C. § 2409a(a) and 42 U.S.C. § 1983 against the above named defendants, the Commonwealth of Puerto Rico and the United States of America. The claim against the United States was dismissed later, as a joint stipulation was filed in which the U.S. recognized plaintiffs as the lawful owners of the property. The complaint against the Commonwealth was also dismissed as being barred by the Eleventh Amendment. In view of these dismissals, what remains before the Court is a civil rights action against the Planning Board, the Culebra Development Authority and the individual defendants for an alleged "deprivation of property without the due process of law" and the "violat[ion of] plaintiffs' constitutional rights." *See* complaint ¶ 11. Plaintiffs' only request for relief is the issuance of an injunction to prohibit defendants from enforcing the alleged unconstitutional regulation, and ordering the removal of plaintiffs' property from the restrictive "P" zoning.

A motion for summary judgment was filed by defendants requesting the dismissal of the complaint on several grounds. After that motion was filed, plaintiffs filed a motion requesting leave to amend their complaint. Both matters having been adequately briefed, they are now ready for consideration and resolution.

*The motion for summary judgment.*

As generally recognized, we may issue a summary judgment under Federal Rule of Civil Procedure 56 "if the pleadings, depositions, answers to interrogatories, and ad-

---

**1.** Planning Board Regulation Number 4, § 24.00 establishes that, under "P" zoning, uses are limited to the following: public park, public parking space, public education institutions, public housing project, government offices, public hospital, fire and police stations, public airport, public cemetery, and other public uses.

missions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." After a thorough examination of the facts of this controversy, we have found that, although some are disputed, none of these are material to the final resolution of this action under the applicable law. *See Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990); *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989). Therefore, summary judgment may be granted if the moving party is lawfully entitled to it.

We turn now to the application of the law. Defendants have moved for summary judgment and dismissal of this action under several legal theories. Essentially relying on the arguments previously discussed by the Court of Appeals for the First Circuit in *Culebras Enterprises Corp. v. Rivera Rios,* 813 F.2d 506 (1st Cir.1987), in which a similar action was dismissed, defendants allege that this action is barred by the Eleventh Amendment, that it is not ripe for adjudication, that it fails to state a cognizable claim under 42 U.S.C. § 1983, and that the doctrines of absolute and qualified immunity shield defendants from liability. Plaintiffs basically assert that the recent Supreme Court decisions in the cases of *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) and *Nollan v. California Coastal Com'n,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) have rendered inapplicable most of the pronouncements made by the Court of Appeals in *Culebras, supra.* After a thorough examination of the issues, we reject plaintiffs' contentions and grant defendants' motion for summary judgment dismissing the original complaint.

It must be emphasized that plaintiffs' only specific claim of a constitutional violation was the alleged deprivation of its property right without due process of law. However, since the complaint also contains a general claim that other constitutional rights were violated, we will consider this action as stating a claim for an alleged taking of property without just compensation in violation of the Fifth Amendment.[2] We must first determine whether these constitutional clauses are applicable to the Commonwealth of Puerto Rico. Although the Supreme Court has not ruled definitely on the application of the Taking Clause of the Fifth Amendment to Puerto Rico, the Court of Appeals for the First Circuit has concluded that the Taking Clause applies to the Commonwealth. *See Tenoco Oil Co. v. Dept. of Consumer Affairs,* 876 F.2d 1013, 1017 n. 9 (1st Cir.1989). On the other hand, the Supreme Court has repeatedly held that Puerto Rico is subject to the Due Process Clause of either the Fifth or the Fourteenth Amendment. *Posadas de Puerto Rico Assoc. v. Tourism Co.,* 478 U.S. 328, 331 n. 1, 106 S.Ct. 2968, 2971 n. 1, 92 L.Ed.2d 266 (1986). Both constitutional guarantees being applicable to the Commonwealth, this Court can properly consider the allegations of unconstitutional conduct raised under them.

The next inquiry is whether this action is ripe for adjudication, in accordance with the doctrine recently developed by the Supreme Court in cases dealing with the constitutionality of land zoning regulations in which both a taking without just compensation, as prohibited by the Fifth Amendment, and a deprivation of a property right without due process under the Fourteenth Amendment were alleged. *See* L. Tribe, *American Constitutional Law,* p. 86 (1988); J. Nowak, R. Rotunda, J. Young, *Constitutional Law,* p. 515 n. 26 (3rd ed. 1986). In *Williamson Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court expressly held that an action by a developer under the Taking Clause and the Due Process Clause for a taking by regulation was premature. The Court developed a two-prong test designed to determine whether an action brought under the Takings Clause of the Constitution was ripe for judicial review. Relying on precedent (*see Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.,* 452 U.S. 264, 101

---

**2.** We note that plaintiffs' tendered amended complaint specifically contains this allegation.

S.Ct. 2352, 69 L.Ed.2d 1 (1981), *Agins v. Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980)), in which claims brought under the Takings Clause were deemed unripe until the government entity charged with implementing the regulations had reached a final decision regarding the application of the regulations to the property, the Court identified, as the first step of its test, the need for plaintiffs to obtain a final decision from the appropriate regulatory agencies on how they will be allowed to develop their property. Elaborating on this initial requirement, the Court said:

> Our reluctance to examine taking claims until such a final decision has been made is compelled by the very nature of the inquiry required by the Just Compensation Clause. Although '[t]he question of what constitutes a "taking" for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty', this Court consistently has indicated that among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations. Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question.

*Williamson*, 473 U.S. at 190–91, 105 S.Ct. at 3118–19 (citations omitted). Under this reasoning, it is not until the local regulatory agencies have refused a plaintiff's request for variances or amendments to the challenged zoning plan, that the courts can make a reasonable determination whether plaintiff will in fact be precluded from obtaining economic benefit from the affected properties. Since this is an essential consideration in any analysis conducted under the Taking Clause, it is evident that the first prong of the ripeness test is mandated by the very nature of that constitutional guarantee.

The same holds for the second prong of the ripeness test established by the Court in *Williamson*, which was identified as a requirement to "seek compensation through the procedures the state has provided for doing so." 473 U.S. at 194, 105 S.Ct. at 3120. As Justice Blackmun said:

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking: all that is required is that a 'reasonable, certain and adequate provision for obtaining compensation' exist at the time of the taking ... [I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

*Williamson*, 473 U.S. at 194–95, 105 S.Ct. at 3120–21 (1985). Under the *Williamson* test, a taking claim will not be considered ripe for judicial review unless (1) claimants have requested from the applicable agency a final decision regarding the application of the challenged regulations to the property, *and* (2) they have similarly sought monetary compensation through the procedures provided by the state.

We also note that in *Williamson*, as in this case, it was also claimed that an excessive zoning regulation can constitute an invalid exercise of the police power violative of the Due Process Clause of the Fourteenth Amendment. In failing to address this issue on the merits, the Court held that ripeness considerations were applicable by analogy:

> Viewing a regulation that 'goes too far' as an invalid exercise of the police power, rather than as a 'taking' for which just compensation must be paid, does not resolve the difficult problem of how to define 'too far', that is, how to distinguish the point at which regulation becomes so onerous that it has the same effect as an appropriation of the property through eminent domain or physical possession. As we have noted, resolution of the question depends, in significant part, upon an analysis of the effect the Commission's application of the zoning ordinance and subdivision regulation

had on the value of respondent's property and investment-backed profit expectations. That effect cannot be measured until a final decision is made as to how the regulations will be applied to respondent's property. No such decision has been made at the time respondent filed its § 1983 action, because respondent failed to apply for variances from the regulations.

*Williamson,* 473 U.S. at 199–200, 105 S.Ct. at 3123. Accordingly, under this theory, an allegation that a land zoning regulation has violated the Due Process Clause will not be ripe for judicial review either, unless and until the claimants request from the zoning agency a final and definitive decision regarding how it will apply the challenged regulation to its property. *See also Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 882 F.2d 1398, 1404 (9th Cir. 1989), *Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1573 (11th Cir.1989), *Lake Lucerne Civic Ass'n v. Dolphin Stadium Corp.,* 878 F.2d 1360, 1372 n. 2 (11th Cir.1989).

■ Since the case before us involves claims made both under the Taking Clause and the Due Process Clause in the context of land regulatory policies, we find that the ripeness requirements established in *Williamson* are controlling. Since the undisputed facts show that plaintiffs have failed to meet any of them, this action is premature and must be dismissed.

Concerning the final-decision requirement of *Williamson,* the uncontroverted evidence shows that plaintiffs failed to obtain from the Planning Board a final decision regarding how the zoning ordinance was specifically going to be applied to their property. Defendants have submitted several documents from the Planning Board which demonstrate that plaintiffs never applied for variances from the zoning ordinance, even though such procedure was readily available under the Commonwealth's laws and regulations. (*See* Puerto Rico Planning Board's Planning Regulation No. 4, Topic 16, § 53.01, as amended on August 27, 1975; later amended by Regulation 3574 of February 16, 1988 without

affecting the availability of the variance procedure. *See also,* regarding the general availability of this remedy, *A.R.P.E. v. J.A. C.L.,* 89 J.T.S. 98, *Asociación Residentes y Amigos de la Calle Doce de Octubre, Inc. v. J.A.C.L.,* 116 D.P.R. 326 (1985), *Quevedo Segarra v. J.A.C.L.,* 102 D.P.R. 87 (1974), *López v. Planning Board,* 80 P.R.R. 625 (1958)). Plaintiffs do not deny this fact, but claim instead that their intervention in the public hearings that preceded the adoption of the zoning regulations here challenged, where they opposed them, was enough to meet the first prong of *Williamson's* test. This is a feeble claim, however, since *Williamson* requires the obtention of a *final* decision regarding the *application* of an already adopted zoning ordinance to their *particular* property, and not merely a final decision on whether the zoning ordinance is going to be adopted or not. Plaintiffs have made little progress because of their misunderstanding of the *Williamson* requirement.

■ They argue that they should not be required to seek variances from the zoning regulations when the suit is predicated on 42 U.S.C. § 1983, given the existence of ample precedent holding that exhaustion of administrative remedies is not a prerequisite to a civil rights action. *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Nonetheless, in *Williamson,* the Court rejected this same argument, stating that:

[t]he question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable. While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. *Patsy* concerned the latter, not the former.

*Williamson,* 473 U.S. at 192–93, 105 S.Ct. at 3119–20 (citations omitted). A landowner, therefore, can be required to seek a variance from the terms of a challenged ordinance before instituting a § 1983 action attacking the application of the same. Because plaintiffs in this action failed to do so, their challenge is still not ripe for adjudication.

▬ In their final chance before striking out, plaintiffs attempt to raise a material issue of fact which certainly would preclude the imminent granting of summary judgment in favor of defendants. Limiting themselves to self-serving statements made for the first time in their brief in opposition to the motion for summary judgment, they now claim that compliance with the finality requirement exacted by *Williamson* should not be demanded in the case at bar, as any attempt to do so would be pointless. In support of their argument they merely state, without submitting any other evidence, that since the only reason for the classification of their property as "P" was the fact that defendants did not recognize their property title, no favorable determination could be available to them in their request for variances at the administrative level while defendants maintained that position. Obviously, this is not sufficient to defeat a motion for summary judgment. A genuine issue for trial precluding summary judgment is not created by mere allegations in the pleadings or by surmise and conjecture on the part of litigants, *U.S. v. Potamkin Cadillac Corp.,* 689 F.2d 379 (2d Cir.1982); nor may summary judgment be defeated on gossamer threads of whimsy and speculation. *Frito Lay of Puerto Rico, Inc. v. Canas,* 92 F.R.D. 384 (D.P.R.

1981). Plaintiffs having failed to meet their burden of presenting evidence sufficient to raise a genuine and material issue of fact, Rule 56 of the Federal Rules of Civil Procedure, Wright, Miller & Kane, *Civil Procedure 2d,* § 2739, summary judgment can properly be entered to dispose of this premature action.[3]

The fact that plaintiffs have failed to meet the first prong of *Williamson's* ripeness test, would suffice to dismiss the complaint as premature under both the Takings Clause and the Due Process Clause. However, even were we to assume that the finality requirement was met, plaintiffs' failure to seek compensation through the procedures the Commonwealth has provided for doing so would have equally rendered their taking claim unripe. We note that there is no dispute between the parties as to the fact that there exist in Puerto Rico compensatory procedures designed to remedy the taking of property by unconstitutionally excessive governmental regulations. Indeed, since 1970 several decisions of the Supreme Court of Puerto Rico have recognized the availability of an inverse condemnation action in cases of regulatory takings, *Heftler International, Inc. v. Planning Board,* 99 P.R.R. 454 (1970), *E.L.A. v. Northwestern Const., Inc.,* 103 D.P.R. 377 (1975), *Planta de Cal Icaco v. Tribunal Superior,* 103 D.P.R. 385 (1975), *Sucesión Garcia v. Autoridad de Carreteras,* 114 D.P.R. 676 (1983), *Pamel Corp. v. E.L.A.,* 89 J.T.S. 101; notwithstanding that actual damages have never been awarded.[4] In similar terms, the Legislative Assembly of Puerto Rico has also provided statutory procedures for inverse condemnation actions, although these have been available

---

3. Even if we were to assume, *arguendo,* that plaintiffs have submitted adequate evidence showing that any attempt to request variances from the Board would have been pointless, we doubt it would have been enough to raise a genuine and material issue of fact, or to preclude granting summary judgment as a matter of law. It should be noted that in *Williamson,* plaintiffs also alleged that as the Planning Commission there sued had disapproved an original plat submitted for its review, it would have been pointless to make an additional request for variances from the zoning regulation until the origi-

nal plat was favorably considered. The Court rejected the allegation that the pointlessness of the procedure was enough to exempt plaintiffs from complying with the same. *See Williamson,* 473 U.S. at 190, 105 S.Ct. at 3118.

4. We simply do not know, as we have been unable to determine it, whether actual damages have been awarded at the Superior Court level in cases that have never reached the Commonwealth Supreme Court for review.

only for the past few years.[5]

Plaintiffs, however, even when recognizing the existence of these compensatory procedures, now object to the adequacy of both of them on the grounds that they are constitutionally insufficient under the Supreme Court holding in *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, supra.* They contend that, since *First English* expressly established that damages are retrospectively available for the period during which a temporary regulatory taking ultimately invalidated as unconstitutional by the courts was in effect, insofar as the local procedures do not provide this damage remedy they fail to meet the *Williamson* standard of a "reasonable, certain and adequate provision for obtaining compensation" and need not be used. Although this is plaintiffs' strongest argument, we must also reject it.

We acknowledge that, in accordance with the Supreme Court decision in *First English*, plaintiffs are now able to demand and recover just compensation for a temporary taking of property. This issue, which was the subject of considerable controversy in the past, was presented before the Court on four previous occasions (*MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986), *Williamson, supra, San Diego Gas & Electric Co. v. San Diego*, 450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981), *Agins v. Tiburon, supra*), but never considered on the merits until the decision in *First English*. *First English*, therefore, finally put an end to years of speculation, debate and exercises in "judicial tea leaf reading" when it conclusively resolved the point in dispute: the Fifth Amendment requires just compensation even in those situations in which a temporary taking takes place.

We fail to see, however, how this renders inadequate the remedies established by local case law for the temporary taking of property. Although none of the cases in which the Supreme Court of Puerto Rico has discussed the availability of the inverse condemnation procedure have actually granted damages, this does not mean that, contrary to the specifications of *First English*, damages will not be awarded. At present, the situation is unclear, but "[l]ack of clarity is not unusual ... when legal rights are still in process of definition through case-by-case adjudication." *Culebras*, 813 F.2d at 514. We note that the Supreme Court decision in *First English* is precisely what makes it more likely that the Commonwealth courts will eventually award damages in an inverse condemnation action for the temporary taking of property by regulation. There is no reason to believe that the Puerto Rico courts would refuse to follow the Supreme Court's constitutional decision. Certainly, any local court denial of just compensation on the ground that temporary takings are not compensable would be constitutionally defective under *First English*. We conclude, then, that plaintiffs have failed to prove the inadequacy of the Commonwealth's casuistic inverse condemnation remedy. As stated by the Court of Appeals, "we think they must pursue that remedy before they can maintain a federal claim, since, when fleshed out by the local court, that remedy could well provide the 'certain and adequate' relief they seek." *Culebras*, 813 F.2d at 515.

**5.** In fact, during the past decade the Legislature of Puerto Rico has twice legislated to provide remedies for situations such as the one in this case in which privately-owned real estate is indefinitely frozen for public purposes. On January 29, 1979, the Legislature approved Act No. 2, 32 L.P.R.A. §§ 2921-2, in which a maximum term of eight (8) years was established as the period during which the Commonwealth could subject private property to public use zoning. The act also provided that, once that period expired, the owner of the property could require from the government the acquisition of its property through eminent domain proceedings, or its removal from the zoning restriction. However, the remedies provided by the act were not immediately available, as it took effect for all practical purposes on January 29, 1987, eight years after its enactment. (*See* section 3 of the Act.) This act was later repealed and substituted by Act. No. 46 of June 26, 1987, which contains similar provisions. *See* 32 L.P.R.A. §§ 2923-7. Up to this date, no action under this Act has still reached the Commonwealth Supreme Court, *cf. Pamel Corp. v. E.L.A., supra*, p. 7245, n. 1, and its constitutionality, extent and scope remains to be determined.

In similar terms, we do not consider that *First English* renders inadequate the inverse condemnation procedure provided by the local statute. We are conscious that the only remedies expressly provided by it are an action for the definitive condemnation of the property or to request its removal from the restrictive regulations, without providing for the payment of damages for the period during which the land was reserved for public use. But the mere fact that the latter remedy is not expressly included in the statute does not make the procedure there ·established inadequate. The lack of any interpretation of the dispositions of this act by the local courts shows that this statutory remedy, when construed by them, could very well turn out to be the certain and adequate remedy required by *Williamson* to be utilized by plaintiffs in regulatory takings actions. That this will be the case we have no doubt, as the damage remedy established in *First English* will most certainly be implicitly recognized in all actions brought under that law, as it is mandated by the Fifth Amendment. It is true that, as in the inverse condemnation remedy provided by case law, the implications of this statutory procedure in the present situation seem unclear. But the fact remains that the procedure exists, that it provides remedies for those situations in which a regulatory taking is alleged, and that there is absolutely no proof whatsoever that these remedies would not be complemented by the damage remedy established in *First English*. Under these circumstances, and in view of the absence of any contrary evidence, we must conclude that this statutory procedure is presumptively reasonable, certain and adequate.

Plaintiffs have labored in vain in their attempt to be exempted from compliance with the second prong of *Williamson's* ripeness test. As they were required to seek compensation through the procedures provided by the Commonwealth before bringing this action in federal court, in having failed to do so they have deprived us of jurisdiction to entertain their taking claim. *Tenoco Oil Co. v. Dept. of Consumer Affairs*, 876 F.2d at 1029, n. 23. Additionally, and under previous precedents of the Court of Appeals, their due process claim also flounders on similar grounds. As the Court of Appeals has observed, "so long as Puerto Rico provides a colorably adequate procedure for obtaining compensation where a landowner complains that his property has been 'frozen' (and in that sense, 'taken'), there can be no violation of substantive due process at least until the inverse condemnation proceeding is resolved" *Ochoa Realty Corp. v. Faria*, 815 F.2d 812, 817 n. 4 (1st Cir.1987), *see also Culebras*, 813 F.2d at 515–16.

In light of the circumstances and the reasoning set forth above, we hold that plaintiffs' federal action seeking injunctive relief for the alleged violation of their constitutional rights under both the Taking Clause and the Due Process Clause is premature. That being the case, defendants' motion for summary judgment is hereby GRANTED and the original complaint is ORDERED DISMISSED. There is no other choice. The Court lacks jurisdiction to consider this action.

*The motion requesting leave to amend the complaint.*

■ Still before the Court is the issue on whether leave to amend the original complaint should be granted. According to Federal Rule of Civil Procedure 15(a), leave to amend the complaint following submission of a responsive pleading "shall be freely given when justice so requires." While this mandate is to be heeded, the decision to grant or deny a motion to amend lies within the discretion of the district court. A court certainly has the discretion to deny it if it believes that, as a matter of law, amendment would be futile, *Demars v. General Dynamics Corp.*, 779 F.2d 95, 99 (1st Cir.1985); or if the proposed amendment could not withstand a motion to dismiss. *Glick v. Koenig*, 766 F.2d 265 (7th Cir.1985). Moreover, where plaintiff files a motion to amend after defendant has moved for summary judgment, the motion to amend will not be granted unless the party seeking amendment can show not only that the proposed amendment has substantial merit, but also comes forward with substantial and convincing evidence supporting the newly asserted claim. *Carey v. Beans*, 500 F.Supp. 580 (E.D.Penn.1980).

We have carefully examined the tendered amended complaint and find that, except for an additional final sentence requesting the assessment of $300,000.00 in damages and the inclusion of two new paragraphs in which a *prima facie* attempt to comply with the *Williamson's* ripeness requirements is made,[6] the same is almost identical to the original complaint just dismissed. Plaintiffs basically argue that as *First English* rendered inadequate the local remedies for inverse condemnation, the amendment should be permitted to claim damages accordingly. (*See* docket entries 31 and 37). We note, nonetheless, that this argument was raised and resolved against plaintiffs when deciding the motion for summary judgment. It cannot reasonably be argued now that it reflects substantial merit justifying granting leave to amend. Moreover, granting leave to file the amended complaint will probably be futile and will unduly burden defendants, as the new allegations regarding the fulfillment of *Williamson's* test were also addressed and disposed of when ruling upon the motion for summary judgment. It is almost certain that, even when amended, the complaint would again stumble and fall on unripeness grounds. We also note that, even if we were to consider this action as ripe for adjudication, the claim for money damages raised by plaintiffs in their amended complaint would be subject to dismissal under several other legal theories. The Eleventh Amendment bars the recovery of damages against the Planning Board, the Culebra Conservation and Development Authority, and the public officers in their official capacity. *Culebras*, 813 F.2d at 516–517. *See also Citadel Corp. v. Puerto Rico Highway Authority*, 695 F.2d 31, 33 n. 4 (1st Cir.1982) ("Even if the constitution is read to require compensation in an inverse condemnation case, the Eleventh Amendment should prevent a federal court from awarding it"). On the other hand, the doctrines of absolute and qualified immunity bar plaintiffs' claims against the officials in their personal capacity. *Culebras*, 813 F.2d at 518–519. Under these circumstances, in the exercise of our discretion, plaintiffs' request for leave to file an amended complaint is hereby DENIED.

Accordingly, judgment shall be entered dismissing the complaint, without prejudice of renewing the same if the actions to be taken before the administrative agency prove fruitless and if the compensatory procedures established by local law turn out to be unreasonable, uncertain and inadequate.

SO ORDERED.

---

**6.** In paragraph 11, fulfillment of the first prong of *Williamson's* test is alleged. It states:

"11. Plaintiffs repeatedly requested from defendants that Culebras' Master Plan be modified and that their properties be liberated, but to no avail. It obviously could not be, since, allegedly, the question went to the title and not to the best use for the land."

In paragraph 15, on the other hand, a claim is made as to the inadequacy of the compensation procedures provided by the Commonwealth. It asserts that:

"15. Plaintiffs have no reason to further claim their rights in the state forums:

A. Defendants intend to keep the property in question earmarked for public use.

B. Notwithstanding the above, and the pendence (*sic*) of this proceeding, no action has been taken by defendants to liberate plaintiffs' land or to acquire it through the process of expropriation.

C. The remedies created by Commonwealth law provide only for the return of the land to its rightful owner, or for expropriation. No provision is made for the payment of the losses incurred by plaintiffs as a result of the use deprivation."