### ASOCIACION de PESCADORES de VIEQUES, INC., Plaintiff,

v.

### Manuela SANTIAGO, in Her Personal and Official Capacity; Municipality of Vieques, Defendants.

### Civ. No. 89–0987 GG.

United States District Court, D. Puerto Rico.

Sept. 10, 1990.

Pedro J. Saade Llorens, Hato Rey, P.R., for plaintiff.

Miguel P. Cancio Bigas, Sánchez, Betances & Sifre, Hato Rey, P.R., for Mayoress.

Francisco R. González, Hernández Sánchez Law Firm, Santurce, P.R., for Municipality and the Mayoress.

## OPINION

GIERBOLINI, District Judge.

On March 20, 1990 the instant action was called for status conference. After discussing the issues of this case—and the arguments presented in defendants' motion for abstention and its opposition—, defendants were granted twenty (20) days to file a motion to dismiss. Plaintiff Asociacion de Pescadores de Vieques, Inc. (Pescadores) would then have the opportunity to file an opposition to said motion. Now pending before us are defendants' motion to dismiss and/or for summary judgment, and plaintiff's opposition.

Plaintiff Pescadores, a corporate entity whose purpose is to support commercial fishermen working out of the offshore island of Vieques, seeks injunctive and monetary relief pursuant to 42 U.S.C. § 1983. It claims to have been deprived of property without due process and without payment of just compensation. Defendants, the Municipality of Vieques and its mayoress, allegedly entered into plaintiff's land and built several structures without complying with local condemnation proceedings. See P.R. Laws Ann. tit. 32 sec. 2901 et seq. Defendants argue that, according to the Registry of Property, plaintiff is not the rightful owner of the land on which the public facilities were built, and even if it were, Pescadores should have sought compensation through inverse condemnation proceedings.

Summary judgment should be granted only "if the pleadings, deposition, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); General Office Products v. A. M. Capen's & Sons, Inc., 780 F.2d 1077 (1st Cir.1986). If a dispute about a material fact is genuine—that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party—, summary judgment should be denied. Id. However, if after a thorough examination of the facts in controversy, we were to find that, although some are disputed, none of these facts are material to the final resolution of the case under the applicable law, summary judgment should be granted. Id.; see also Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990).

According to the statements of uncontested facts and the documents attached, the instant action centers on a 0.6373 "cuerda" lot located at the La Esperanza sector of the Puerto Real ward in the municipality of Vieques. This parcel of land faces the Caribbean Sea, and once belonged to a 1990–acre tract the Puerto Rico Land Authority acquired from Eastern Sugar in 1949. On March 27, 1967 the small lot in question was segregated and transferred to the state government for use by the Puerto Rico Department of Agriculture so that fishing facilities would be developed in

said location. Vieques fishermen seem to have used the lot for their activities.

On August 20, 1982 the Puerto Rico Department of Transportation and Public Works certified that the parcel of land object of the instant action had ceased to be of public usefulness. Consequently, the lot was transferred free of charge to the Corporation for the Development and Administration of Marine, Lacustrian and Fluvial Resources (CODREMAR) about a year later. CODREMAR, a public corporation, is the entity attached to the Puerto Rico Department of Natural Resources in charge of the development of our coastal zone. P.R. Laws Ann. tit. 12 sec. 1351 *et seq.* Among the reasons for the transfer of the lot to CODREMAR was that the federal government's Economic Development Administration Office had allocated the sum of one million two hundred thousand dollars ($1,200,000) for the improvement of the existing fishing facilities at La Esperanza. As part of the deal with the federal government, plaintiff Pescadores would buy the lot from CODREMAR. The Department of Natural Resources authorized CODREMAR to sell the land to plaintiff by means of its Resolution No. XXIII of August 8, 1983.

■■ Although plaintiff has submitted copy of the deed through which CODREMAR sold the lot in question to Pescadores, it appears that the transfer of the title and CODREMAR's right of mortgage were not registered at the Registry of Property. Therefore, and pursuant to local mortgage law, CODREMAR is still the legal owner of the parcel of land. P.R. Laws Ann. tit. 30 sec. 2001 *et seq.* In order for a mortgage to be legally binding with respect to third parties, the same must be duly registered. *Martin v. Montijo,* 109 D.P.R. 268 (1980); *Rosario Pérez v. Registrador,* 115 D.P.R. 491 (1984). Although much has been written about the constitutive nature of the right of mortgage, plaintiff insists nevertheless that it owns the land in controversy, and that defendants knew that the lot belonged to Pescadores.

Mortgage law matters aside, defendants set forth that five public hearings were held in 1986 to discuss the La Esperanza project. This project comprised of: 1) the reconstruction of State Road 997; 2) the building of a park, a boardwalk and an embankment; and 3) the canalization of an existing creek so that it could be used as haven for commercial fishing vessels. Defendants allege that fishermen were consulted regarding this project, and that members of plaintiff Pescadores attended at least one of the hearings. (See statement by Mrs. Manuela Santiago Collazo, Mayoress of Vieques). Therefore, defendants bring to our attention that plaintiff had plenty of time to object to the project. Plaintiff argues that it objected to the project when—in the spring of 1989—defendants entered into its lands and began building on them; defendants were then in the process of constructing phase two of the project, the embankment. Plaintiff allegedly notified the mayoress, but she replied that she was not aware that plaintiff owned the lot on which it was being constructed. (See statement by Mr. Carlos Zenón, vice-president of Pescadores). It was then that plaintiff decided to seek remedy under the Civil Rights Act.

Plaintiff claims that defendants deprived it of its property without due process of law. It also alleges that its property was taken without just compensation in violation of the Fifth Amendment. Although the Supreme Court has not ruled definitely on the application of the Taking Clause of the Fifth Amendment to Puerto Rico, the First Circuit has established that said clause does apply to the Commonwealth. *Martínez v. Junta de Planificación de Puerto Rico,* 736 F.Supp. 413, 416 (D.P.R. 1990) (citing *Tenoco Oil Co. v. Dept. of Consumer Affairs,* 876 F.2d 1013, 1017 n. 9 (1st Cir.1989)). The Supreme Court has held that Puerto Rico is subject to the Due Process Clause of either the Fifth or the Fourteenth Amendment. *Id.* (citing *Posadas de Puerto Rico Assoc. v. Compañia de Turismo,* 478 U.S. 328, 331, 106 S.Ct. 2968, 2971, 92 L.Ed.2d 266 (1986)).

■ Recent cases dealing with the Taking Clause and condemnation proceedings have dealt, in the most part, with

zoning regulation matters. *Williamson Co. Regional Planning v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); *Culebras Enterprises Corp. v. Rivera Ríos,* 813 F.2d 506 (1st Cir.1987); *Ochoa Realty Corp. v. Faría,* 815 F.2d 812 (1st Cir.1987); *Citadel Corp. v. Puerto Rico Highway Authority,* 695 F.2d 31 (1st Cir.1982), *cert. denied,* 464 U.S. 815, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *Pamel Corp. v. Puerto Rico Highway Authority,* 621 F.2d 33 (1st Cir.1980). Restrictive government regulation which denies an owner all reasonable beneficial use of his lands may have the same effect as an actual appropriation of the property for public use, which would be a taking under the Fifth Amendment, and which is what plaintiff alleges in the instant action. *Williamson Co. Regional Planning v. Hamilton Bank,* 473 U.S. at 185, 105 S.Ct. at 3115.

In *Williamson,* the Supreme Court held that plaintiff's taking claim was not ripe because he had not previously sought compensation through the state of Tennessee's inverse condemnation procedures.[1] *Ochoa Realty Corp. v. Faría,* 815 F.2d at 816 (citing *Williamson Co. Regional Planning v. Hamilton Bank,* 473 U.S. at 195, 105 S.Ct. at 3121).

> The recognition that a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation is analogous to the Court's holding in *Parratt v. Taylor,* 451 U.S. 527 [101 S.Ct. 1908, 68 L.Ed.2d 420] (1981). There, the Court ruled that a person deprived of property through a random and unauthorized act by a state employee does not state a claim under

the Due Process Clause merely by alleging the deprivation of property. In such a situation, the Constitution does not require predeprivation process because it would be impossible or impractical to provide a meaningful hearing before the deprivation. Instead, the Constitution is satisfied by the provision of meaningful post-deprivation process.

While Tennessee law regulates inverse condemnation proceedings, no Puerto Rico statute provides expressly for an inverse condemnation remedy. *Culebras Enterprises Corp. v. Rivera Ríos,* 813 F.2d at 513. The purpose of an inverse condemnation action is "to serve as a protection for the owners to force the State to comply with the constitutional provisions guaranteeing that no person shall be deprived of his property without due process of law and without having received compensation." *Id.* (citing *Hefler International, Inc. v. Planning Board,* 99 P.R.R. 454, 460 (1970)).

Recent Puerto Rico Supreme Court cases show a willingness to recognize the general availability of an inverse condemnation remedy in regulatory takings. *Culebras Enterprises Corp. v. Rivera Ríos,* 813 F.2d at 513. *See also Hefler, supra; Commonwealth v. Northeastern Construction Co.,* 103 D.P.R. 377 (1975); *Planta de Cal Icaco v. Tribunal,* 103 D.P.R. 385 (1975); *Olivero v. Autoridad,* 107 D.P.R. 301 (1975); *Sucn. García v. Autoridad,* 114 D.P.R. 676 (1983). No damages have ever been awarded by the Puerto Rico Supreme Court in inverse condemnation actions. Nonetheless, said court is aware of the existence of an inverse condemnation remedy, and could grant it if the right case came along. *Culebras Enterprises Corp. v. Rivera Ríos,* 813 F.2d at 515. Thus, the Commonwealth's inverse condemnation remedy is not inadequate, and plaintiff "must pursue

---

**1.** *Williamson* established a two-prong test to determine if an action brought under the Taking Clause is ripe or not: 1) the need for a final decision by the appropriate administrative agency regarding the taking, and 2) the application for monetary compensation through the procedures provided by state law. *Williamson Co.*

*Regional Planning Commission v. Hamilton Bank,* 473 U.S. at 190–1, 194–5, 105 S.Ct. at 3118–9, 3120–1; *see also Martínez v. Junta de Planificación,* 736 F.Supp. at 416–7. For purposes of this opinion, we shall stress on the second condition of the ripeness test.

that remedy before [it] can maintain a federal damages claim, since, when fleshed out by the local court, that remedy could well provide the 'certain and adequate' relief" it seeks. *Id.* So long as local law provides a colorably adequate procedure for obtaining compensation where a landowner claims that his property has been taken, "there can be no violation of substantive due process, at least until the state inverse condemnation proceeding is resolved." *Ochoa Realty Corp. v. Faría,* 815 F.2d at 817 (citing *Culebras Enterprises Corp. v. Rivera Ríos,* 813 F.2d at 515–6).

A landowner would need to seek compensation in a local court inverse condemnation action pursuant to regular condemnation regulation before filing an action for federal damage remedy under 42 U.S.C. § 1983. P.R. Laws Ann. tit. 32 sec. 2901 *et seq.; Ochoa Realty Corp. v. Faría,* 815 F.2d at 816.[2]

Since plaintiff has failed to follow the procedure provided by the Commonwealth before bringing this action before us, we find that we do not have jurisdiction to entertain its claims. *Martínez v. Junta de Planificación,* 736 F.Supp. at 421 (citing *Tenoco Oil Co. v. Dept. of Consumer Affairs,* 876 F.2d at 1029).

The other arguments set forth by plaintiff do not warrant our attention in light of our conclusion that the instant action is not ripe. It is up to the local superior court to determine, for example: 1) if Pescadores can indeed claim to be the owner of the lot in question; 2) if plaintiff should be granted the remedy it seeks; and 3) the value of plaintiff's lot, and 4) how much of plaintiff's land, if any, was built upon by defendants.

Wherefore, in view of the above, defendants' motion for summary judgment is hereby GRANTED. The instant action is DISMISSED. The Clerk shall enter judgment accordingly.

SO ORDERED.

---

2. The local government can exercise its power to condemn property pursuant to Art. II sec. 9 of the Constitution of the Commonwealth of Puerto Rico. Condemnation of private lands must comply with two constitutional requirements: 1) that it be for public use, and 2) for just compensation. Local condemnation proceedings begin when the government makes a declaration of public usefulness; hearings may be held to discuss the reasons for expropriating a given plot of land. P.R. Laws Ann. tit. 32 § 2902.

Private property may be taken by the government for a variety of purposes such as the construction of roads, water works, cemeteries, parks, post offices, military installations, and electric power facilities. *Id.* at § 2903. Other purposes include the development of a general plan of economic reconstruction, and even for aesthetic reasons. *Id.* at § 2904; *Cervecería Corona v. Secretario,* 97 D.P.R. 44 (1976).

Once the public usefulness has been established, the government must file a civil action before the Superior Court. *Id.* at § 2905. All parties having an interest in the property to be condemned may appear. *Id.* at § 2906. The government must deposit in court the amount it believes constitutes just compensation. *Id.* at § 2907. The amount to be awarded to the owner of the plot of land is subject to—among other factors—when the actual taking by the government took place, since the taking could have occurred prior to the filing of the action before the Superior Court. *Id.* at § 2909.