Calixto **DENIZ MARQUEZ,** Plaintiff

v.

**MUNICIPALITY OF GUAYNABO, et al., Defendants**

**No. CIV 01–1066 (JP).**

United States District Court, D. Puerto Rico.

May 17, 2001.

Ana L. Toledo–Dávila, San Juan, PR, for Plaintiff.

Pablo Landrau–Pirazzi, Hato Rey, PR, for Defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

### I. INTRODUCTION

Before the Court is Defendants Municipality of Guaynabo, Héctor O'Neill, and Aurialis Lozada Centeno's Motion to Dismiss and Memorandum of Law Filed in Support Thereof (**docket No. 5**) and Motion to Dismiss Amended Complaint (**docket No. 17**), as well as Plaintiff Calixto Deniz Márquez's Opposition thereto (docket No. 9). This is an action brought pursuant to 42 U.S.C. § 1983 by Plaintiff, a developer, who alleges that since May 1999 Defendants have deprived him of his rights in properties located in the Frailes Llanos ward of the Municipality of Guaynabo without just compensation or due process of law, thereby violating the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs also invoke the Court's pendent jurisdiction to assert claims under Puerto Rico law. Defendants move for dismissal under Rules 12(b)(1) and/or 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that this Court lacks subject matter jurisdiction and/or that Plaintiff has failed to state a claim upon which relief can be granted.

### II. FACTUAL ALLEGATIONS

The Complaint states that Plaintiff owns two properties located on Road No. 169, Km. 4.5, in the Frailes Llanos ward of the Municipality of Guaynabo. One of the properties, the Los Frailes Building, is built on a 300 square meter parcel of land and has 16 office and commercial spaces. The second property is an adjacent 600 square meter parcel of land used as a parking lot. In or around February 1999, Plaintiff claims he received an offer for the purchase of both properties in the amount of $625,000.00. After signing the purchase contract, Plaintiff states that the purchaser

went to the offices of the Municipality of Guaynabo and there was informed that he should not purchase the properties because the Municipality intended to expropriate them. The purchaser thereafter withdrew the offer. The Complaint further states that a second purchaser tendered an offer of $625,000.00, but also withdrew the offer after learning that the Municipality intended to expropriate the properties to construct its offices.

Plaintiff alleges that on March 31, 1999, he sent a letter to Defendants requesting an explanation as to why he had not been informed of their intention to expropriate his properties. He specifically requested that the Municipality inform him whether it indeed intended to proceed with the expropriation. On May 21, 1999, Plaintiff alleges that Co-defendant Lozada responded to Plaintiff's letter, informing him that Co-defendant O'Neill was interested in carrying out the expropriation. Lozada also specifically prohibited Plaintiff from renewing any of the leases with his commercial tenants. According to the Complaint, when the tenants learned of the Municipality's intent to expropriate the property, they all eventually vacated their rented spaces. Notwithstanding several meetings and conversations between Plaintiff and Co-defendant Lozada, to date the Municipality has not filed an expropriation case in court nor has it officially designated the land for public use. As a result, Plaintiff contends that he is precluded from exerting any state law remedies that would permit him to recover just compensation. Plaintiff claims to have suffered damages in the form of lost rents and alleges that the mortgage is now on·the verge of being foreclosed.

## III. LEGAL STANDARD

In adjudicating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir.1991). Although there is a low threshold for stating a claim, the pleading requirement is "not entirely a toothless tiger." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996) (quoting *The Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989)). A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Romero–Barcelo v. Hernandez–Agosto*, 75 F.3d 23, 28 n. 2 (1st Cir.1996) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988)). For the purposes of this motion, therefore, all factual allegations in the Complaint will be accepted as true and viewed in the light most favorable to Plaintiff.

## IV. DISCUSSION

Defendants raise two grounds for dismissal. First, Defendants argue that the facts asserted in the Complaint do not amount to a taking under the Fifth Amendment because there has been no physical occupation of the property or regulatory action designating the land for public use. The second basis advanced by Defendants in favor of dismissal is that because Plaintiff has not pursued an inverse condemnation remedy under Puerto Rico law, his claim is unripe for adjudication before this Court. Plaintiff opposes

dismissal, contending that Defendants' actions and statements constitute a *de facto* taking of his property, but that because Defendants have not expropriated the property through traditional channels, the inverse condemnation proceeding is unavailable.

The Fifth Amendment to the United States Constitution proscribes the taking of private property without due process of law. *See* U .S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."). The U.S. Supreme Court has recognized that most cases arising under the Takings Clause fall into one of two categories: where the government authorizes a physical occupation of property or actually takes title ("physical taking"), or where government regulation of the property's use unfairly singles out the property owner to bear a burden that should be borne by the public as a whole ("regulatory taking"). *Yee v. City of Escondido*, 503 U.S. 519, 522–23, 112 S.Ct. 1522, 1526, 118 L.Ed.2d 153 (1992); *see also Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426, 102 S.Ct. 3164, 3171, 73 L.Ed.2d 868 (1982) (physical taking); *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 123–125, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978) (regulatory taking).

■ "The government effects a physical taking only where it requires the landowner to submit to the physical occupation of his land." 'This element of required acquiescence is at the heart of the concept of occupation.' *Yee*, 503 U.S. at 527, 112 S.Ct. at 1528 (quoting *FCC v. Florida Power Corp.*, 480 U.S. 245, 252, 107 S.Ct. 1107, 1112, 94 L.Ed.2d 282 (1987)). A physical taking occurs, for example, when the government takes title to private property, floods a landowner's property, or installs a cable on that land. *See id.* The

government must then provide compensation to the landowner who suffers the compelled physical invasion of his or her property. *See id.*

■ The government effects a regulatory taking, on the other hand, when it takes regulatory action that goes "too far." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1014, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992) (citing *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922)). The U.S. Supreme Court has found that a regulation that "denies all economically beneficial or productive use of land" constitutes a regulatory taking. *Id.* at 1015, 112 S.Ct. at 2893. Such a scenario, however, represents the most extreme form of a regulatory taking; other, less extreme factual scenarios may give rise to a takings action against the government, but such a determination "entails complex factual assessments of the purposes and economic effects of government actions." *Yee*, 503 U.S. at 523, 112 S.Ct. at 1525.

Here, Plaintiff's claim does not fall neatly into either of these two categories. The facts alleged do not support an action for a physical taking. Nor does the Complaint suggest that a regulatory enactment rests at the heart of this claim. Rather, Plaintiff advances a claim for a *de facto* taking resulting from the statements and representations of government officials. This is not the first time such a claim is brought in this district. In *Inmobiliaria Borinquen, Inc. v. Garcia Santiago*, 295 F.Supp. 203 (D.Puerto Rico 1969), where the complaint alleged that Commonwealth officials effected a taking when they informed the plaintiff of their intent to acquire certain parcels of land, but took no action to acquire that land for three years, the court found that the complaint stated a claim under the Takings Clause. *See Inmobiliaria*, 295 F.Supp. at 205. The plaintiff had

contended that the parcels of land—also located, oddly enough, in Los Frailes—had effectively remained "frozen" for that period of time, thereby causing severe losses. *See id.* at 206.

■ Similarly, the instant Complaint alleges that Defendants notified Plaintiff of their intent to condemn two parcels of land, and specifically prohibited Plaintiff from renewing the leases of its commercial tenants. Yet, Plaintiff asserts that for two years Defendants have taken no action to carry out the expropriation, resulting in serious financial losses to Plaintiff. Based on *Inmobiliaria*, the Court finds Defendants' first grounds for dismissal, that the Complaint fails to state a takings claim because it spells out neither a physical nor regulatory taking as these categories are traditionally understood, without merit. *See Inmobiliaria*, 295 F.Supp. at 205; *see also Yuba Goldfields, Inc. v. United States*, 723 F.2d 884, 888 (Fed.Cir.1983) (taking occurred when U.S. government denied plaintiffs use of their mineral rights for nearly six years, without possessing the land or taking title to those property interests). *Cf. Pettro v. United States*, 47 Fed. Cl. 136 (2000) (plaintiff entitled to just compensation where government ordered it to cease exercising mineral rights under erroneous belief that it owned title, and government then filed quiet title action but never physically occupied land or took title).

Having concluded that Plaintiff has stated a claim for a taking under the Fifth and Fourteenth Amendments, the Court goes on to address Defendants' contention that this case is unripe because Plaintiff has not pursued the inverse condemnation remedy in the local courts. Plaintiff argues the unavailability of the inverse condemnation remedy because Defendants' conduct does not fit neatly into either of the traditional takings molds. But Plaintiff cannot have

his cake and eat it too. In other words, to the extent Plaintiff successfully argues that the Complaint sets forth a claim for just compensation, he is bound first to pursue the state inverse condemnation remedy based on the same allegations of fact.

■ The purpose of an inverse condemnation action is "to serve as a protection for the owners to force the State to comply with the constitutional provisions guaranteeing that no person shall be deprived of his property without due process of law and without having received compensation." *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 513 (1st Cir. 1987) (quoting *Hefler Int'l, Inc. v. Planning Board*, 99 P.R.R. 454, 460 (Puerto Rico 1970)). The Puerto Rico Supreme Court has recognized the availability of an inverse condemnation remedy in cases involving a physical occupation, the taking of a property interest, or a regulatory taking. *See Aner Investment Corp. v. Junta de Planificacion*, CC-97–321, 1999 WL 258587, \*2 (Puerto Rico Apr.29, 1999); *Culebra Enterprises, Inc. v. Estado Libre Asociado de Puerto Rico*, Num. AP–95–1, 1997 WL 870831, \*4 (Puerto Rico Oct.31, 1997); *Hampton Development Corp. v. Estado Libre Asociado de Puerto Rico*, 139 D.P.R. 877, 888 (Puerto Rico 1996); *see also Culebras Enterprises*, 813 F.2d at 515. Thus, Plaintiff must pursue the Commonwealth's inverse condemnation remedy "before [it] can maintain a federal damages claim, since, when fleshed out by the local court, that remedy could well provide the 'certain and adequate' relief" it seeks. *Culebras Enterprises*, 813 F.2d at 515.

Notwithstanding Plaintiff's position that the remedy is not available in a case such as this, the First Circuit has cited favorably Justice O'Connor's concurrence in *Hudson v. Palmer*, that in order to prevail on a damages claim in a takings action,

" 'the claimant must either avail himself of the remedies guaranteed by state law or prove that the remedies are inadequate.' " *Id.* at 515 (quoting *Hudson v. Palmer*, 468 U.S. 517, 539, 104 S.Ct. 3194, 3207, 82 L.Ed.2d 393 (1984)). The only proof marshaled by Plaintiff to evidence the inadequacy of the local remedy consists of a negative inference that because the only inverse condemnation cases decided by the Puerto Rico Supreme Court have involved a physical or regulatory taking, the remedy would not be available on the facts presented herein. The First Circuit addressed, and rejected, a similar argument in *Culebras Enterprises*. In that case, the Court noted that "Puerto Rico's inverse condemnation remedy ... has not been fully spelled out by the Supreme Court of Puerto Rico and its implications for the present situation are thus unclear." *Id.* at 514. It found that because the Puerto Rico Supreme Court had signaled the existence of an inverse condemnation remedy, Plaintiff was obligated to pursue the remedy notwithstanding a lack of clarity as to its contours. *See id.* at 515. The Court further rested its holding on the grounds that Plaintiff had not sustained its burden of establishing the inadequacy of that remedy. *See id.* This district also has recognized that "[s]o long as local law provides a colorably adequate procedure for obtaining compensation where a landowner claims that his property has been taken, 'there can be no violation of substantive due process, at least until the state inverse condemnation proceeding is resolved.' " *Asociacion de Pescadores de Vieques, Inc. v. Santiago*, 747 F.Supp. 134, 138 (D.Puerto Rico 1990) (quoting *Ochoa Realty Corp. v. Faria*, 815 F.2d 812, 817 (1st Cir.1987)).

Accordingly, the Court finds that Plaintiff must avail itself of the state inverse condemnation remedy before filing a federal action for damages under section 1983. *See Ochoa Realty*, 815 F.2d at 816–17 ("[W]e have held that exhaustion of state law remedies—whatever form they may take—is a precondition to the maintenance of a federal damages action under the Takings Clause, and [ ] we have recently found that the remediation arguably available in Puerto Rico is not so illusory as to call for a departure from the usual rule."). As Plaintiff has failed to pursue the state remedy, the Court does not have jurisdiction, under the prudential doctrine of ripeness, to entertain his claims. *See id.; Culebras Enterprises*, 813 F.2d at 515; *Santiago*, 747 F.Supp. at 138.

## V. CONCLUSION

In view of the foregoing, the Court hereby **GRANTS** Defendants' motion to dismiss. Further, the pendent state law claims raised in the Complaint are hereby **DISMISSED WITHOUT PREJUDICE.** *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 357, 108 S.Ct. 614, 623, 98 L.Ed.2d 720 (1988) (where the basis for federal question jurisdiction has been eliminated from a case in its early stages, leaving only state law claims, the district court should decline to continue asserting jurisdiction).

**IT IS SO ORDERED.**