# United States Court of Appeals
## For the First Circuit

No. 01-2020

CALIXTO DENIZ, A/K/A CALIXTO DENIZ MARQUEZ,
Plaintiff, Appellant,

v.

MUNICIPALITY OF GUAYNABO ET AL.,
Defendants, Appellees.

No. 01-2021

CALIXTO DENIZ, A/K/A CALIXTO DENIZ MARQUEZ,
Plaintiff, Appellee,

v.

MUNICIPALITY OF GUAYNABO ET AL.,
Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Ana L. Toledo Dávila for plaintiff.
Pablo Landrau-Pirazzi, with whom Aldarondo & López Bras was on brief, for defendants.

April 8, 2002

**SELYA, Circuit Judge.** These appeals grow out of an action brought pursuant to 42 U.S.C. § 1983. In that action, plaintiff-appellant Calixto Déniz Márquez accuses the Municipality of Guaynabo (the Municipality) of confiscating his property without just compensation. The district court held that the plaintiff's takings claims were unripe and dismissed the action. Déniz Márquez v. Municipality of Guaynabo, 140 F. Supp. 2d 135, 140 (D.P.R. 2001). The plaintiff appeals. We affirm.

## I.

## Background

Since the district court disposed of this matter on a Rule 12(b)(1) motion to dismiss, without taking evidence, we accept as true all well-pleaded factual averments in the plaintiff's amended complaint and indulge all reasonable inferences therefrom in his favor. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 365 (1st Cir. 2001).

The plaintiff is a real estate developer who owns two adjoining parcels of real estate (the Property) in Guaynabo. One parcel contains a three-story office building. The abutting (unimproved) parcel serves as a parking lot for that building.

In or around February of 1999, the plaintiff signed a conditional agreement to sell the Property for $625,000. Before

-3-

the closing date, the would-be buyer visited the municipal offices and learned that the Municipality intended to take the Property by eminent domain. He promptly withdrew his offer. A second potential purchaser backed out for much the same reason.

The plaintiff was perplexed because he had heard nothing from the Municipality concerning an expropriation of the Property. On March 31, 1999, he inquired whether the Municipality intended to proceed with a condemnation action. Almost two months later, Aurialis Lozada, the director of Guaynabo's legal division, responded to his letter. She informed the plaintiff that the mayor of Guaynabo, Héctor O'Neill, intended to take the Property by eminent domain. Presumably to facilitate this plan, Lozada forbade the plaintiff from renewing any of the office building leases. Word of the putative taking spread, and tenants began to quit the premises like rats deserting a sinking ship.

Despite several subsequent conversations between the plaintiff and Lozada, the Municipality neither designated the Property for public use nor commenced eminent domain proceedings. During this hiatus, the plaintiff's income stream dried up, his mortgage went into default, and the mortgagee began to threaten foreclosure. Left in a bureaucratic limbo and concerned about his financial plight, the plaintiff brought suit

-4-

in Puerto Rico's federal district court. His operative pleading (the amended complaint) named the Municipality, O'Neill, and Lozada as defendants. It alleged violations of section 1983 and the Fifth Amendment to the United States Constitution. The gist of the case was the averment that the defendants' conduct amounted to a de facto taking that unconstitutionally deprived the plaintiff of the beneficial use of the Property without just compensation. For good measure, the plaintiff added a due process claim, as well as supplemental claims under local law.

The suit provoked two motions to dismiss. The first, based upon ripeness considerations, asserted that the district court lacked subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). The second, more substantively oriented, asserted that the amended complaint failed to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6).

For reasons that are not immediately apparent, the district court first addressed the Rule 12(b)(6) motion and found it wanting. Déniz Márquez, 140 F. Supp. 2d at 138-39. The court determined, however, that the Rule 12(b)(1) motion was dispositive because the plaintiff had an obligation to pursue the inverse condemnation remedy available under Puerto Rico law before prosecuting his takings claims under section 1983. Id. at 139-40. Accordingly, the court dismissed the plaintiff's

federal claims as unripe and dismissed the remaining (supplemental) claims without prejudice.  Id. at 140.  The plaintiff appealed, and the defendants cross-appealed from the denial of their Rule 12(b)(6) motion.


## II.

### The Plaintiff's Appeal

We review de novo the district court's dismissal of the plaintiff's federal claims as unripe.  Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995). We begin our inquiry by framing the issue and then proceed to discuss the plaintiff's contentions.

### A.

### Setting the Stage

42 U.S.C. § 1983 provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  This statute "supplies a private right of action against a person who, under color of state law, deprives another

-6-

of rights secured by the Constitution or by federal law." <u>Evans</u> v. <u>Avery</u>, 100 F.3d 1033, 1036 (1st Cir. 1996).  For section 1983 purposes, Puerto Rico is deemed equivalent to a state.  <u>See</u> <u>Martínez</u> v. <u>Colón</u>, 54 F.3d 980, 984 (1st Cir. 1995).

The plaintiff centers his primary section 1983 claim on the allegation that the defendants unlawfully deprived him of his rights in the Property without just compensation.  Their conduct, he alleges, constituted a de facto confiscation and thereby violated the Takings Clause.  <u>See</u> U.S. Const. amend. V (prohibiting the taking of private property for public use without just compensation).

The initial hurdle is easily cleared:  the defendants are alleged to have acted under color of Puerto Rico law, and the Takings Clause applies unreservedly to the Commonwealth of Puerto Rico.  <u>Tenoco Oil Co.</u> v. <u>Dep't of Consumer Affairs</u>, 876 F.2d 1013, 1017 n.9 (1st Cir. 1989).  Once past this point, however, insurmountable obstacles loom.  Chief among them is the question of ripeness.

That question arises out of the plaintiff's decision to pursue his takings claims directly in federal court.  The Supreme Court has explained that:

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation.  Nor does the Fifth Amendment require that just

-7-

> compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a "reasonable, certain, and adequate provision for obtaining compensation" exist at the time of the taking.

Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194 (1985) (citations omitted). Thus, a takings claim ordinarily is considered unripe if the claimant comes directly to a federal court without first seeking compensation through state procedures. Id. at 194-95.

To be sure, this rule — like most rules — admits of exceptions. One such exception is that a claimant in a takings case may be excused for failing to seek recourse from the state courts if all potential state remedies are "unavailable or inadequate." Id. at 196-97. But this exception is narrowly construed, and the claimant must carry the heavy burden of showing unavailability or inadequacy. Gilbert v. City of Cambridge, 932 F.2d 51, 65 (1st Cir. 1991). In this operose endeavor, doubts are to be resolved in favor of exhaustion. Thus, if it is unclear whether a particular state-law remedy pertains, the claimant must attempt to exploit it — and his federal takings claim will not be deemed ripe unless and until he has pursued, and exhausted, that course. Id.

This exception lies at the heart of the plaintiff's appeal. The dispositive question here is whether the plaintiff

has made a sufficient showing that Puerto Rico law affords him <u>no</u> remedy for the alleged taking. We turn next to that question.

<b><u>B.</u></b>

<b><u>Availability of the Inverse Condemnation Remedy</u></b>

The remedy of inverse condemnation serves as a "protection for [landowners] to force the State to comply with the constitutional provisions guaranteeing that no person shall be deprived of his property without due process of law and without having received compensation." <u>Culebras Enters. Corp.</u> v. <u>Rivera Rios</u>, 813 F.2d 506, 513 (1st Cir. 1987) (discussing Puerto Rico law). Although the remedy is not memorialized in Puerto Rico's Civil Code, the case law makes clear that inverse condemnation is generally available under Puerto Rico law. <u>See</u> <u>Ochoa Realty Corp.</u> v. <u>Faria</u>, 815 F.2d 812, 817 (1st Cir. 1987); <u>Culebras</u>, 813 F.2d at 513-14; <u>Aner Inv. Corp.</u> v. <u>Junta de Planificacíon</u>, 99 TSPR 65, 1999 WL 258578, at *2 (P.R. 1999); <u>Culebra Enters. Corp.</u> v. <u>Estado Libre Asociado</u>, 143 P.R. Dec. 935, 1997 WL 870831, at *4 (P.R. 1997).

The plaintiff does not challenge the generic availability of an inverse condemnation remedy under Puerto Rico law, but, rather, contends that he is precluded from invoking

that remedy.  He makes three main points in support of his claim

that the inverse condemnation remedy is unavailable to him.

First, he suggests that the inverse condemnation remedy

does not extend to a de facto taking.[1]  The case law is sparse,

but the authorities tend toward the view that the remedy applies

to de facto takings.  See Aner Inv. Corp., 99 TSPR 65, 1999 WL

258587, at *2 (explaining that Puerto Rico's inverse

condemnation remedy applies not only to physical occupation and

regulatory taking cases but also to other "real property rights'

takings" which have been effected "without the state filing

first the eminent domain action or having consigned the due

compensation"); Culebra Enters., 143 P.R. 935, 1997 WL 870831,

at *4 (observing that the inverse condemnation remedy applies

"when the state effects a 'de facto' taking," albeit linking

that term to actions "affecting substantially the property use,

physically or by regulatory means").  Since the plaintiff has

failed to adduce any case law that expressly precludes use of

the inverse condemnation remedy as a means of redressing a de

facto taking, the most that can be said is that it remains

---

[1]By "de facto taking," we mean a taking that occurs without
either a physical occupation, e.g., Loretto v. Teleprompter
Manhattan CATV Corp., 458 U.S. 419, 426 (1982), or some formal
regulatory action, e.g., Lucas v. S.C. Coastal Council, 505 U.S.
1003, 1014 (1992).

unclear whether the inverse condemnation remedy applies here. That uncertainty undercuts the plaintiff's position.

Culebras illustrates the point. There, the plaintiffs made much the same argument, asserting that it was at best unclear whether the Puerto Rico courts would entertain a claim for inverse condemnation on the facts at hand. 813 F.2d at 514-15. We rejected their "uncertainty" argument, explaining that:

> Lack of clarity is not unusual, however, when legal rights are still in process of definition through case-by-case adjudication. The Puerto Rico high court has at least discussed, and has seemingly signaled, the existence of an inverse condemnation remedy. . . . We think [that the appellants] must pursue that remedy before they can maintain a federal damages claim . . . .

Id. at 514-15.

So it is here. If the plaintiff were to pursue the inverse condemnation remedy, the local courts would be presented with an issue of first impression under Puerto Rico law. Until he travels that road, the availability vel non of the inverse condemnation remedy remains open to question. It is the claimant's burden to prove that the potential state remedy is unavailable, and uncertainty prevents him from carrying that burden. Consequently, his section 1983 takings claims are unripe. See Gilbert, 932 F.2d at 64-65 (holding that as long as the State provides an arguably adequate process for securing

-11-

compensation for a taking, federal intervention under section 1983 before the claimant has resorted to that procedure is premature).

The plaintiff's second argument focuses on the fact that the Property has never been zoned or otherwise officially designated for public use. Relying upon the logic of negative inference, the plaintiff posits that all the reported Puerto Rico inverse condemnation cases have involved properties earmarked for public use. Building on this foundation, he reasons that the inverse condemnation remedy is unavailable where, as here, the property is zoned for commercial use.

As presented, this contention never gets out of the starting gate. The plaintiff presumes to prepare for the race by embracing a number of opinions authored by the Supreme Court of Puerto Rico, but he neglects to furnish us with translations of those opinions. This oversight not only hampers our ability to evaluate his claim but also contravenes our local rules. Those rules state, in pertinent part, that: "Whenever an opinion of the Supreme Court of Puerto Rico is cited in a brief or oral argument which does not appear in the bound volumes in English, an official, certified, or stipulated translation thereof with three conformed copies shall be filed." 1st Cir. R. 30(d).

A violation of Rule 30(d) is serious business.  We have given fair warning that we will not permit parties to disregard the rule with impunity.  E.g., Rolon-Alvarado v. Municipality of San Juan, 1 F.3d 74, 77 n.1 (1st Cir. 1993) (referencing previous version of Rule 30(d)).  This is as it should be: attorneys who appear before us are expected to know and follow the rules.  Ramos-Baez v. Bossolo-Lopez, 240 F.3d 92, 94 (1st Cir. 2001).

The short of it is that a party who flouts Local Rule 30(d) does so at his peril.  Specifically, he runs the risk that he will be deemed to have forfeited arguments if those arguments are based upon untranslated opinions or, alternatively, if perscrutation of untranslated opinions is integral to their resolution.[2]  See, e.g., Stein v. Royal Bank, 239 F.3d 389, 393 n.5 (1st Cir. 2001); Gonzalez-Morales v. Hernandez-Arencibia, 221 F.3d 45, 50 n.4 (1st Cir. 2000).

Here, the plaintiff's failure to supply the required translations has left us in the lurch.  The absence of English translations (save for two relevant case excerpts provided by the defendants) has compounded the seeming uncertainty in the

---

[2]Parties who fail to satisfy their obligations under Local Rule 30(d) also run the risk of sanctions, as do their attorneys.  See Lama v. Borras, 16 F.3d 473, 478 n.6 (1st Cir. 1994) (referencing previous version of Rule 30(d)).

relevant Puerto Rico case law.  Under the circumstances, the most appropriate course is to reject the plaintiff's "public use" argument to the extent that it is based upon untranslated opinions.

The upshot of our ruling is that the plaintiff is left clinging to a single case (for which a translation is available) in support of his contention that the inverse condemnation remedy extends only to land that has been zoned or officially designated for public use.  That case, Heftler Int'l, Inc. v. Planning Bd., 99 P.R.R. 454 (P.R. 1970), marked the first occasion on which the Supreme Court of Puerto Rico discussed inverse condemnation.  For our purposes, the court's comments are elliptical, and, in all events, they are dictum.  See id. at 462-63 (disposing of the case based upon the plaintiff's failure to exhaust administrative remedies); see also Culebras, 813 F.2d at 513 (making this point).  It is, then, transparently clear that Heftler, unaided, cannot bear the weight that the plaintiff piles upon it.

In a final effort to distinguish his case from the mine run, the plaintiff alleges that the mortgagee has commenced foreclosure proceedings — according to the plaintiff, foreclosure is underway because his tenants have fled, leaving him unable to pay the mortgage — and avers that, once he loses

title, he also will lose the ability to pursue the inverse condemnation remedy. This construct is fatally flawed.

The fact of the matter is that the plaintiff has not yet lost title. As of the date of oral argument in this court, foreclosure proceedings had been pending for some time, but had yet to be consummated. Therefore, the inverse condemnation remedy remains potentially available to the plaintiff.[3] Moreover, a divestiture of title would not undermine the plaintiff's section 1983 takings claim for damages incurred while he owned the Property. See United States Olympic Comm. v. Intelicense Corp., 737 F.2d 263, 268 (2d Cir. 1984) ("[T]he owner of an interest in property at the time of [an] alleged taking has standing to assert that a taking has occurred.") (emphasis supplied); see also United States v. Dow, 357 U.S. 17, 21-22 (1958). Consequently, the threat of foreclosure does not serve to ripen the plaintiff's federal claims.

That ends this aspect of the matter. A plaintiff's failure to exhaust the inverse condemnation remedy renders premature a section 1983 damages action predicated upon an

---

[3]We hasten to add that we have no reason to believe that the Puerto Rico courts would limit the inverse condemnation remedy to current owners. The plaintiff cites no apposite cases to that effect, and the law elsewhere is to the contrary. E.g., Klopping v. City of Whittier, 500 P.2d 1345, 1360 (Cal. 1972) (allowing claimant who lost property through foreclosure to pursue inverse condemnation claim).

alleged takings violation.  <u>Ochoa</u>, 815 F.2d at 816-17; <u>Culebras</u>, 813 F.2d at 514-15.

## C.

### <u>Due Process</u>

There is one final point.  In addition to his takings claims, the plaintiff alleges that the defendants' conduct is immediately actionable as a violation of the substantive component of the Due Process Clause of the Fourteenth Amendment. That allegation need not detain us.

Dressing a takings claim in the raiment of a due process violation does not serve to evade the exhaustion requirement.  Here as we have said, the inverse condemnation remedy represents an arguably available and adequate means of obtaining compensation for the alleged taking.  <u>See</u> <u>supra</u> Part II(B).  Thus, no substantive due process claim will lie until that remedy is exhausted.  <u>Ochoa</u>, 815 F.2d at 817 n.4; <u>Culebras</u>, 813 F.2d at 515-16.

## <u>III.</u>

### <u>The Defendants' Cross-Appeal</u>

We need not dwell upon the defendants' cross-appeal. Although the district court passed upon, and denied, the defendants' Rule 12(b)(6) motion, <u>Déniz Márquez</u>, 140 F. Supp. 2d at 138-39, that decision was gratuitous.  It would be equally

gratuitous for us to reach the merits of the cross-appeal, and we decline to do so.

When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter.  See NE Erectors Ass'n v. Sec'y of Labor, 62 F.3d 37, 39 (1st Cir. 1995); see also Bell v. Hood, 327 U.S. 678, 682 (1946) ("Whether the complaint states a cause of action on which relief could be granted is a question of law [which] must be decided after and not before the court has assumed jurisdiction over the controversy.").  After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest.  Accordingly, we regard the lower court's Rule 12(b)(6) ruling as a nullity and thus dismiss the defendants' cross-appeal.

## IV.

### Conclusion

We need go no further.  The plaintiff's failure to seek recompense through Puerto Rico's inverse condemnation remedy renders both his takings and substantive due process claims unripe for federal adjudication.  Hence, we affirm the district court's dismissal of the plaintiff's federal claims for lack of subject matter jurisdiction.  We likewise affirm the court's

dismissal without prejudice of the plaintiff's supplemental claims under local law.  <u>See</u> 28 U.S.C. § 1367(c)(3); <u>see</u> <u>also</u> <u>Serapión</u> v. <u>Martínez</u>, 119 F.3d 982, 993 (1st Cir. 1997) (noting the district court's "substantial discretion" in regard to relinquishing jurisdiction over supplemental claims after the dismissal of the linchpin federal claims).  Finally, we dismiss the defendants' cross-appeal as non-justiciable.

**Affirmed.**