LAURA TAYLOR SWAIN, United States District Judge *333 Before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (docket entry[2] no. 35 (the "Motion") ). Except as explained below, the Court has jurisdiction of this action pursuant to 48 U.S.C. § 2166. The Court heard oral argument on the Motion on December 5, 2017 (the "Hearing"), and has considered carefully all of the arguments and submissions made in connection with the Motion. For the reasons that follow, Defendants' Motion is granted and Plaintiffs' Complaint is dismissed in its entirety.[3]
I.
BACKGROUND
The following recitation of facts is drawn from Plaintiffs' Complaint (docket entry no. 1 (the "Complaint") ).
Plaintiffs are beneficial owners of general obligation bonds issued by the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico") and bonds issued by certain Commonwealth public corporations that are guaranteed by the Commonwealth (together, "public debt"). (Compl. ¶ 2.) Plaintiffs also characterize their holdings as "Constitutional Debt" "entitled to unique protections under the Puerto Rico Constitution and backed by a pledge of the Commonwealth's good faith, credit and taxing power," and characterize themselves and other holders of such bonds as "Constitutional Debtholders." (Compl. ¶ 27.) Citing Article VI, section 8 and other provisions of the Constitution of Puerto Rico, Plaintiffs assert that their bonds are secured by an "absolute and enforceable" first claim and lien on all of the Commonwealth's "available resources," and that the Constitutional Debt is senior to all other debt issued by Puerto Rico.[4] (Compl. ¶¶ 2, 27.)
*334 Plaintiffs allege that "Constitutional Debt" is "public debt" within the meaning of the Puerto Rico Constitution, and that it is therefore entitled to full and timely payment "even (and especially) in times of economic scarcity." (Compl. ¶ 27.) Plaintiffs further contend that statutory provisions obligating the Commonwealth to use certain special property tax revenues for payment of the Constitutional Debt, and "clawback" provisions of the enabling statutes authorizing certain of the Commonwealth's instrumentalities to issue bonds and providing for use of the revenues ordinarily dedicated to payment of the instrumentality bonds to fund payments of debt service on the Constitutional Debt under certain circumstances, grant Plaintiffs and their fellow bondholders rights in those revenues. Plaintiffs' Complaint focuses specifically on: (1) certain proceeds of property taxes levied pursuant to Act 83 of 1991 (the "Special Property Tax Revenues"); and (2) the proceeds of certain taxes and fees generally used to repay certain Commonwealth instrumentality obligations, which can be "clawed back" under some circumstances to repay public debt (the "Clawback Revenues"). (Compl. ¶¶ 2, n.2, 3.)
On November 30, 2015, Puerto Rico Governor Alejandro García Padilla issued an executive order instructing the Commonwealth to retain the Clawback Revenues, which were used to make a $164 million Constitutional Debt service payment on January 1, 2016. (Compl. ¶ 89.) Plaintiffs contend that the Commonwealth clawed back an additional $289 million in Clawback Revenues in fiscal year 2016 which were not applied towards the repayment of Constitutional Debt. (Id. ) On July 1, 2016, the Commonwealth defaulted on approximately $817 million due on its Constitutional Debt. (Compl. ¶ 97.)
On June 30, 2016, the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") was enacted by Congress and signed into law to provide, among other things, federal statutory authority pursuant to which the Commonwealth and its instrumentalities may restructure their debts.[5] See PROMESA § 405(m). Pursuant to PROMESA, a Financial Oversight and Management Board (the "Oversight Board") was established with the purpose of developing "a method [for the Commonwealth] to achieve fiscal responsibility and access to capital markets." Id. § 101(a). Plaintiffs allege that, since at least 2016, the Commonwealth has collected significant Clawback and Special Property Tax Revenues and "ignored Plaintiffs' property interests" in those revenues, choosing instead to apply those revenues to general Commonwealth expenses rather than the repayment of Constitutional Debt. (Compl. ¶¶ 85, 97, 119.) Plaintiffs further allege that the Oversight Board's certification of a revised fiscal plan in March 2017 was premised on the pooling of Commonwealth resources to service all expenses, while providing for very limited debt service. (Compl. ¶¶ 117-119.) In May 2017, the Oversight Board filed a petition commencing this debt adjustment case under Title III of PROMESA.[6] (Compl. ¶ 141.) Plaintiffs accuse the Commonwealth and the Oversight Board *335 of violating PROMESA and abusing Title III, asserting that the failure to segregate revenues and dedicate them principally to the payment of service on Constitutional Debt violates Plaintiffs' rights under the Puerto Rico Constitution and statutes. (Compl. ¶¶ 119-140.)
Plaintiffs' requests for relief are more narrowly drafted than the body of their Complaint, and principally seek declaratory relief of a directive nature concerning the handling of the subject revenues, or declarations of legal status that do not address the practical consequences of the requested declarations. Plaintiffs also request a declaration in connection with a constitutional claim, and assert one claim for injunctive relief.
In Counts One and Two of the eleven-count Complaint, Plaintiffs seek declarations that, under Puerto Rico law, the Special Property Tax and Clawback Revenues are "restricted" and that Defendants are prohibited from collecting or using those revenues for any purpose other than paying Constitutional Debt. (Compl. ¶¶ 179-186.) In Counts Three and Four, Plaintiffs seek declarations that Plaintiffs have, and the Commonwealth lacks, "equitable or beneficial" property interests in the Special Property Tax and Clawback Revenues. (Compl. ¶¶ 187-196.) In Counts Five and Six, Plaintiffs seek declarations that Plaintiffs have statutory liens on the Special Property Tax and Clawback Revenues. (Compl. ¶¶ 197-206.) In Count Seven, Plaintiffs seek a declaratory judgment that their liens on the Clawback Revenues also constitute liens on "special revenues" within the meaning of 11 U.S.C. §§ 902(2)(B) such that the Clawback Revenues must be applied in accordance with 11 U.S.C. §§ 922(d) and 928, and that, under 11 U.S.C. § 922(d), the automatic stay that arose upon the filing of the Commonwealth's Title III petition[7] does not operate as a stay of the application of the Clawback Revenues to payment of the Constitutional Debt. (Compl. ¶¶ 207-214.) In Count Eight, Plaintiffs seek a declaration that the Commonwealth's diversion of the Special Property Tax and Clawback Revenues without just compensation would constitute an unlawful taking under the Fifth Amendment of the United States Constitution. (Compl. ¶¶ 215-220.) In Counts Nine and Ten, Plaintiffs seek declarations that, under Puerto Rico law, the Special Property Tax and Clawback Revenues must be segregated and deposited into a designated account, and cannot be commingled or used for purposes other than the payment of Constitutional Debt. (Compl. ¶¶ 221-232.) In Count Eleven, Plaintiffs seek injunctive relief prohibiting Defendants from "confiscat[ing] and misappropria[ting]" the Special Property Tax and Clawback Revenues, and directing Defendants to segregate and preserve those revenues for the payment of Constitutional Debt. (Compl. ¶¶ 233-237.)
II.
DISCUSSION
Defendants move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. Defendants principally argue that the Court lacks subject matter jurisdiction of all of Plaintiffs' claims because the relief sought is advisory or is precluded by section 305 of PROMESA. Defendants also assert arguments going to *336 the merits of Plaintiffs' claims of secured creditor status and entitlement to uninterrupted payments, contending that Plaintiffs are unsecured creditors and that PROMESA preempts many or all of the provisions of Puerto Rico law upon which Plaintiffs rely. For the following reasons, the Court concludes that it lacks subject matter jurisdiction of the claims asserted in Counts Three through Eight, which must therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), and that Counts One, Two, and Nine through Eleven of the Complaint fail to state claims upon which relief may be granted, and must therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).
A court presented with motions to dismiss under both Rules 12(b)(1) and 12(b)(6) should ordinarily decide jurisdictional questions before addressing the merits. Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149 (1st Cir. 2002). The party invoking the jurisdiction of a federal court carries the burden of proving jurisdiction. Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007). To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Miss. Pub. Employees' Ret. Sys. v. Boston Scientific Corp., 523 F.3d 75, 85 (1st Cir. 2008).
A. Subject Matter Jurisdiction
At oral argument of the motion and in their written submissions, Defendants contended that Plaintiffs' claims for declaratory relief either seek to achieve coercive results, in which case they are barred by section 305 of PROMESA, or merely request advisory opinions, in which case they fail to satisfy the basic constitutional requirement of a case or controversy ripe for adjudication by this federal court. The Court, furthermore, has its own independent duty to assess whether it has subject matter jurisdiction.[8]
1. Case or Controversy Requirement
Article III, section 2 of the Constitution of the United States limits the exercise of federal judicial power to actual cases and controversies. U.S. Const. art. III, § 2; Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 239-41, 57 S.Ct. 461, 81 L.Ed. 617 (1937). The authority conferred on federal courts by the Declaratory Judgment Act, 28 U.S.C. § 2201, is likewise limited to controversies that are within the constitutionally-constrained scope of federal jurisdiction. Aetna, 300 U.S. at 240, 57 S.Ct. 461. A justiciable *337 controversy must be "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion what the law would be upon a hypothetical state of facts." Aetna, 300 U.S. at 241, 57 S.Ct. 461. Federal courts are not empowered to issue advisory opinions where there is no such actual controversy. See id.; Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969) ; Shell Oil Co. v. Noel, 608 F.2d 208, 213 (1st Cir. 1979).
Here, there are clearly legal and factual disagreements between Plaintiffs and the Commonwealth as to a number of important issues, including whether or not the Constitutional Debt is secured, the nature and extent of any such security, whether the Constitutional Bondholders are entitled to debt service payments and/or explicit provision therefor during the pendency of these Title III proceedings, and whether the current Fiscal Plan and any plan of adjustment consistent with its contours would comply with PROMESA and ultimately be confirmable.
The constitutional requirement that controversies be justiciable and admit of specific relief through a decree of a conclusive character demands more, however, than strong or even significant disagreement, however high the stakes, to obtain declaratory relief. The issue must be raised, and the relief sought, in a fashion that would address a specific live controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. See Golden, 394 U.S. at 108, 110, 89 S.Ct. 956. Rulings on isolated or abstract points that will principally be useful in formulating or litigating future choices that might or might not be made are outside the authorized scope of declaratory relief. See, e.g., Pub. Servs. Comm'n. of Utah v. Wycoff Co., Inc., 344 U.S. 237, 244, 73 S.Ct. 236, 97 L.Ed. 291 (1952) ("The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them .... [W]hen the request is not for ultimate determination of rights but for preliminary findings and conclusions intended to fortify the litigant against future regulation, it would be a rare case in which the relief should be granted."). Here, Plaintiffs acknowledge that, in at least some of their claims for relief, they merely seek a determination of aspects of their legal rights rather than a conclusive determination of ultimate issues in this PROMESA debt adjustment process, but argue that a justiciable case or controversy exists because the relief sought by Plaintiffs would be controlling in any future plan of adjustment, and would have an impact on how subsequent fiscal plans are crafted. (Opp. at 45-48; Hearing Tr. at 44-45.)
The Court now turns to a review of Plaintiffs' claims.
a. Counts One and Two
Counts One and Two of the Complaint seek, respectively, declarations that the Special Property Tax Revenues and the Clawback Revenues are, under Puerto Rico law, "restricted and cannot be collected or used by Defendants for any purpose except to satisfy the Commonwealth's payment obligations with respect to outstanding Constitutional Debt." (Compl. ¶¶ 182, 186.) Plaintiffs' request for a declaration that the subject revenues are "restricted" is, standing alone, vague and inconclusive and insufficient to frame a case or controversy. The Court thus lacks subject matter jurisdiction of that aspect of the request. The remainder of the request-for a declaration that, under Puerto *338 Rico law, the revenues can only be collected and used to satisfy the Commonwealth's payment obligations with respect to Constitutional Debt is, however, directed and addressed to a specific immediate dispute. It would, if granted, speak directly to the Commonwealth's ability to deal with revenues that, according to the Complaint, are currently being collected and applied. (For this reason, it also implicates the provisions of section 305 of PROMESA, which are discussed infra.) The Court therefore has subject matter jurisdiction of this latter aspect of the claims asserted in Counts One and Two.[9]
b. Counts Three through Seven
Count Three seeks declarations that the Commonwealth "(i) is a mere conduit for the Special Property Tax Revenues and lacks any equitable or beneficial property interest in the Special Property Tax Revenues and (ii) Plaintiffs, as Constitutional Debtholders, have equitable and beneficial property interests in the Special Property Tax Revenues." (Compl. ¶ 191.) Count Four requests identical declarations with respect to the Clawback Revenues. (Compl. ¶ 196.) The relief requested in these Counts amounts to abstract declarations of the parties' respective relationships to the subject revenues, without application of the relief to resolve any current concrete dispute, such as a claim objection proceeding, request for adequate protection or relief from stay, or confirmation-related proceeding. They thus seek advisory opinions and do not frame justiciable controversies. Accordingly, Counts Three and Four must be dismissed for lack of subject matter jurisdiction.
In Count Five, Plaintiffs request a declaration that "Constitutional Debt is secured by a statutory lien on the Special Property Tax Revenues." (Compl. ¶ 201.) Count Six seeks the same declaration as to statutory liens on the Clawback Revenues. (Compl. ¶ 206.) These claims for relief suffer from the same fundamental flaw as those asserted in Counts Three and Four-lack of a dispositive connection with a current controversy. They seek advisory opinions and must therefore be dismissed for lack of subject matter jurisdiction.
Count Seven seeks a declaratory judgment that "(i) the Clawback Revenues are special revenues within the meaning of 11 U.S.C. § 902(2)(B) and must be applied in accordance with 11 U.S.C. §§ 922(d) and 928, and (ii) pursuant to 11 U.S.C. § 922(d), the automatic stay does not operate as a stay with respect to the application of the payment of the Clawback Revenues to payment of Constitutional Debt." (Compl. ¶ 214.) Notwithstanding its specific references to provisions of the Bankruptcy Code that have been incorporated into PROMESA by section 301 of that statute, this claim for relief is also devoid of the requisite conclusive element. The first requested declaration proffers no content with respect to Plaintiffs' position as *339 to the practical impact of an obligation to "appl[y] [revenues] in accordance with" the cited statutory provisions,[10] and the latter merely restates a snippet of statutory language. It does not frame a justiciable controversy and must therefore be dismissed for lack of subject matter jurisdiction.
c. Count Eight
Count Eight presents a different combination of barriers to justiciability-a hypothetical factual context and an unripe claim. Plaintiffs assert that they are "entitled to a declaratory judgment that the Commonwealth's use of [the Special Property Tax and Clawback] Revenues for any purpose other than payment of Constitutional Debt, without just compensation, would constitute an unlawful taking of property under the Takings Clause of the Fifth Amendment to the United States Constitution, which is applicable to the Commonwealth." (Compl. ¶ 220 (emphasis added).) Plaintiffs' own language lays bare the hypothetical nature of the claim. That this is no mere accident of word choice is made obvious by the facts, of which the Court can take judicial notice, that these Title III cases are in their early stages and the PROMESA debt adjustment process contemplates progress from a fiscal plan, to a proposed plan of adjustment, to confirmation proceedings in connection with such a proposed plan. Any changes in creditors' rights with respect to their property can be imposed only through the mechanism of a plan approved by this federal court as compliant with PROMESA.
In the First Circuit, a plaintiff asserting a takings claim must demonstrate that he or she (1) "received a final decision from the state on the use of his [or her] property," and (2) "sought compensation through the procedures the State has provided for doing so." Garcia-Rubiera v. Calderon, 570 F.3d 443, 451 (1st Cir. 2009) (internal quotation marks and citation omitted). Plaintiffs have the burden of demonstrating ripeness. Id."[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." Id. at 452 (emphasis removed). Plaintiffs have failed to allege, and cannot allege, that the Commonwealth "has arrived at a definitive position" regarding any disbursement of funds that may "inflict[ ] an actual, concrete injury" upon them for Takings Clause purposes. See id. At this point, even the content of the fiscal plan is in flux following the devastating September 2017 hurricane, so there is no final decision by the Commonwealth as to the treatment of the subject revenues, much less any determination of what compensation would be provided if property rights were taken. Absent a final determination by the government entity with respect to the treatment of the asserted property right, a Takings Clause claim is not ripe for adjudication. Count Eight must therefore be dismissed for lack of subject matter jurisdiction.
d. Counts Nine through Eleven
Counts Nine through Eleven request declaratory and injunctive relief relating to the handling of the subject revenues. Counts Nine and Ten seek declarations that, under Puerto Rico law, the Special Property Tax (Count Nine) and Clawback (Count Ten) Revenues "must be (i) segregated and deposited into a designated account, and (ii) not *340 commingled with other funds of the Commonwealth or used for any purpose other than repaying the Plaintiffs, as Constitutional Debtholders." (Compl. ¶¶ 226, 232.) Count Eleven demands an injunction "enjoining Defendants from continuing to confiscate and misappropriate the [Special Property Tax and Clawback] Revenues, and directing Defendants to segregate and preserve the [the Special Property Tax and Clawback] Revenues for payment of Constitutional Debt in accordance with the constitutional, statutory and contractual obligations specified [in the preceding paragraphs of the Complaint]." (Compl. ¶ 235.) The Court has subject matter jurisdiction of these claims, which demand sufficiently specific and immediate conclusive relief to frame justiciable controversies. The Court will next address the impact of PROMESA section 305 on the viability of these claims, and on those portions of the claims in Counts One and Two of which this Court has subject matter jurisdiction.
2. Impact of PROMESA Section 305 on Subject Matter Jurisdiction
Defendants argue that Counts One, Two and Nine through Eleven of the Complaint, which the Court has found meet the constitutional case or controversy requirement by reason of the framing of the requests for relief, are excluded from the Court's subject matter jurisdiction by section 305 of PROMESA, which provides that:
Subject to the limitations set forth in titles I and II of [PROMESA], notwithstanding any power of the court, unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with-
(1) any of the political or governmental powers of the debtor;
(2) any of the property or revenues of the debtor; or
(3) the use or enjoyment by the debtor of any income-producing property.
48 U.S.C.S. § 2165 (LexisNexis 2017). As explained in the Court's recent decision in Assured, section 305 is not a jurisdictional provision. (See Assured, supra note 8, at 9-12.)
B. Impact of PROMESA Section 305 on the Court's Ability to Grant Relief
Since section 305 nonetheless disables the Court from granting certain types of relief, it is significantly (and literally) determinative of the question of whether Plaintiffs have stated claims upon which relief may be granted. Here, the relief sought in Counts One, Two and Nine through Eleven would, if granted, result in declarations and an injunction that would directly restrict the Commonwealth's use of its revenues and its exercise of political and governmental powers. The Oversight Board has not consented to any such relief. The Court thus cannot grant the relief sought.
Plaintiffs' argument that declaratory relief is not precluded by section 305 is unavailing. The statute bars the Court from interfering with the enumerated governmental powers, revenues and property "by any stay, order, or decree, in the case or otherwise"-a prohibition of sufficient breadth to encompass all forms of relief. Plaintiffs' reliance on Steffelv. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), for the proposition that declaratory relief is some mild and ineffective instrument that is materially distinguishable from injunctive relief with respect to interference with its target, is misplaced. While *341 the Steffel Court, which was concerned with issues of federalism and the circumstances under which a federal court could adjudicate the constitutionality of a state criminal statute prior to the institution of a prosecution, did recognize that the Declaratory Judgment Act's purpose "was to provide a milder alternative to the injunction remedy," it by no means suggested that declaratory relief is toothless. See id. at 467, 94 S.Ct. 1209. Indeed, it affirmed the proposition that Congress intended the declaratory judgment procedure to be a means of testing the constitutionality of state criminal statutes, and the Court's decision anticipated that declaratory judgments "would be given effect by state authorities," even though a declaratory judgment is "not ultimately coercive." Id. at 467-68, 469, 471, 94 S.Ct. 1209 ; see also Roe v. Wade, 410 U.S. 113, 166, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (affirming grant of declaratory relief and holding that injunctive relief was unnecessary because "we assume the Texas prosecutorial authorities will give full credence to this decision that the present criminal abortion statutes of that State are unconstitutional"). Section 305's prohibition is not limited to remedies that are directly coercive; a decree that the territorial government or its instrumentality must conduct its affairs in a manner different from the one it has chosen is necessarily one that would interfere within the meaning of the statute. The Court is thus precluded by PROMESA section 305 from granting the requested declaratory and injunctive relief and Counts One, Two and Nine through Eleven must be dismissed for failure to state a claim upon which relief may be granted.
III.
CONCLUSION
For the foregoing reasons, Defendants' Motion is granted pursuant to Federal Rule of Civil Procedure 12(b)(1) with respect to Counts Three through Eight of the Complaint, and pursuant to Federal Rule of Civil Procedure 12(b)(6) with respect to Counts One, Two and Nine through Eleven of the Complaint. The Clerk of Court is requested to enter judgment accordingly and close this adversary proceeding. This Opinion and Order resolves docket entry nos. 33 and 35 in 17 AP 189.
SO ORDERED.

All docket entries refer to those in Adversary Proceeding No. 17-00189 in Case No. 17 BK 3283, unless otherwise specified.

In a separate Request for Judicial Notice (docket entry no. 33), Plaintiffs sought judicial notice of Exhibits A-E referenced in their Motion. The Court declines to take judicial notice of these documents, as they are immaterial to the Court's analysis.

Article VI, section 8 of the Puerto Rico Constitution provides that: "In case the available revenues including surplus for any fiscal year are insufficient to meet the appropriations made for that year, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law." P.R. Const. art. VI, § 8.

PROMESA is codified at 48 U.S.C. § 2101 etseq. References to "PROMESA" in the remainder of this opinion are to the uncodified version of the legislation.

See PROMESA §§ 304 and 312-14.

See 11 U.S.C. § 362(a), made applicable to this Title III proceeding by section 301 of PROMESA.

In their written submissions, Defendants advanced their PROMESA section 305 subject matter jurisdiction argument in connection with Counts One, Two, Seven and Nine through Eleven. As explained in this Court's January 30, 2018, decision dismissing the Amended Complaint in Assured Guaranty Corp. et al. v. Commonwealth of Puerto Rico et al. (see docket entry no. 125 in case no. 17-AP-155 and docket entry no. 121 in case no. 17-AP-156, "Assured"), section 305 is not a jurisdictional provision but, rather, circumscribes a PROMESA Title III court's power to grant certain types of relief and so can preclude a litigant's ability to state a claim for the proscribed relief. (Assured at 9-12.) While section 305 presents barriers to the extent Plaintiffs request concrete relief that would effectively interfere with the Commonwealth's governmental functions, revenues, or property, certain of the declaratory relief requests are sufficiently unconnected to conclusive resolution of the issues raised as to constitute requests for advisory opinions.

The Court notes Defendants' argument that section 106(e) of PROMESA, which deprives the Court of jurisdiction to review challenges to the Oversight Board's certification determinations under PROMESA, effectively renders these specific declaratory relief requests advisory and nonjusticiable because, if implemented, they would require actions that would disable the current Fiscal Plan and thus contemplate indirectly relief that the Court lacks jurisdiction to provide. The Court declines to engage this nuanced argument at this juncture because, as explained below, section 305 of PROMESA explicitly denies the Court power to grant the relief and thus, although subject matter jurisdiction is present as to certain aspects of the Counts, they fail to state claims upon which relief may be granted insofar as they seek to constrain the Commonwealth's collection and application of the subject revenues.

The Court interpreted sections 922(d) and 928 of the Bankruptcy Code recently in Assured, where the plaintiffs sought a declaration that ongoing payments to bondholders were required by those provisions. (See Assured, supra note 8, at 16-24.)