Hampshire Paper v. Highland Supply    CV-02-032-JD   07/18/02
                 UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE


Hampshire Paper Corporation

        v.                              Civil No. 02-32-JD
                                        Opinion No. 2002 DNH 135
Highland Supply
Corporation, et al.


                            O R D E R


     The plaintiff, Hampshire Paper Corporation, brings suit

seeking a declaratory judgment, pursuant to 28 U.S.C. § 2201, of

non-infringement and invalidity of the defendants' patents and

configuration trademarks and of patent and trademark misuse.

Hampshire also alleges claims of unfair competition in violation

of the Lanham Act and New Hampshire law.  The defendants move to

dismiss Hampshire's declaratory judgment claims, and Hampshire

objects.[1]

_____

        [1]Defendants Prima Tek II and Southpac move to dismiss the
claims against them for lack of personal jurisdiction and, in
that event, to dismiss all of the claims due to the lack of an
indispensable party.  The defendants also move to dismiss the
patent and trademark misuse claims and unfair competition claims
for failure to state a claim.  In response to Hampshire's motion
for limited discovery and for an extension of time to file its
objection, the court ordered Hampshire to first address the issue
of subject matter jurisdiction.  Therefore, the only issue to be
resolved at this time is the question of subject matter
jurisdiction with respect to the claims seeking a declaratory
judgment.

## Standard of Review

The Federal Circuit has exclusive jurisdiction over an appeal from a final decision of this court if subject matter jurisdiction was based at least in part on 28 U.S.C. § 1338, which is the case here. See 28 U.S.C. § 1295(a)(1); Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc., 122 S. Ct. 1889, 1892-93 (U.S. 2002). In reviewing district court decisions, the Federal Circuit applies its own law to patent law issues but generally applies the law of the regional circuit where the district court sits to nonpatent issues. Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc). Therefore, the standard of review for a motion challenging subject matter jurisdiction with respect to patent claims is provided by the Federal Circuit, see Mars Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368, 1371 (Fed. Cir. 1994), while the standard for determining subject matter jurisdiction as to the trademark claims is provided by the First Circuit, see PHC, Inc. v. Pioneer Healthcare, Inc., 75 F.3d 75, 78 (1st Cir. 1996).

In reviewing motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court takes the facts alleged in the complaint as true and will not dismiss the claims if the allegations support any reasonable basis for jurisdiction.

See Pixton v. B&B Plastics, Inc., 291 F.3d 1324 (Fed. Cir. 2002) (page references not available); Deniz v. Municipality of Guaynabo, 285 F.3d 142, 144 (1st Cir. 2002). When the parties submit additional materials, such as affidavits, in support of or in opposition to a motion to dismiss under Rule 12(b)(1), the court considers the submitted materials without converting the motion to one for summary judgment. See Vink v. Hendrikus Johannes Schijf Rolkan N.V., 839 F.2d 676, 677 (Fed. Cir. 1988); Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

## Background

Hampshire Paper is in the business of making and selling flexible decorative packaging for the floral industry. Highland Supply Corporation is in the business of making and selling floral and decorative packaging products, merchandising products, display products, and plant cover products. Defendant Southpac Trust International, Inc. owns patents and trademarks related to preformed covers for potted plants, and defendants Highland and Prima Tek II, L.L.C. ("PTII"), own licensed rights to the patents and trademarks. The defendants hold 1000 patents and trademarks associated with plant covers and dominate the market for those products.

During the summer of 1987, Hampshire notified Highland that

3

it intended to manufacture and sell covers made of solid color multi-laminated sheets of plastic. Hampshire sent a sample cover with its letter and asserted that the sample did not infringe any of the defendants' patents. In its complaint, Hampshire states that the sample was a cover manufactured by another company, Jacobson Hat Company, during the 1970s, before the defendants' first patents and trademarks were issued in 1980.

In response, the defendants' attorney wrote to Stephan B. Stepanek, president of Hampshire, saying that the defendants understood that Hampshire intended to copy one of the defendants' covers and if that were done, the defendants would sue Hampshire. The defendants also asserted trademark rights and other interests in the sample product. Correspondence continued between counsel for both parties and a meeting was held in December of 1988. After the meeting, Highland Supply sent a "Settlement Agreement" to Hampshire, which Hampshire rejected.

Highland brought suit against Hampshire seeking specific performance and breach of contract arising from the "Settlement Agreement." The court dismissed two counts, and after a trial on the third count, the jury found in Hampshire's favor on that count. Highland voluntarily dismissed its appeal. Hampshire did not pursue its plan to manufacture plant covers at that time.

In 1997, Hampshire developed a machine to band flower pots

4

with decorative cover material. Hampshire displayed its machine at a trade show in January of 1998 where Highland employees saw the machine and asked questions about it. Two weeks later, Highland and PTII filed suit alleging that the banding machine infringed seven patents owned by Southpac and licensed to Highland and PTII. The parties entered a consent decree which was filed on April 20, 1999. Hampshire also notes that the defendants brought suit to enforce their intellectual property rights in twelve cases filed between 1987 and 2000.

Hampshire states in the complaint that it has recently manufactured plant covers and intends to continue to manufacture the covers and sell them throughout the United States. On September 13, 2001, Stepanek sent a letter to Donald Weder, president of Highland, saying that Hampshire was contemplating developing plant covers "formed of solid color multi-laminate sheets of plastic as exemplified in the prototype sent to you with our prior letter of August 12, 1987." Am. Comp. ¶ 68. Stepanek also wrote that it was Hampshire's understanding that the majority of the patents identified in the previous correspondence with Highland about the plant cover business had expired and that the others did not apply.

Weder answered Stepanek's letter saying that Highland was a licensee of PTII and that he had referred the letter to PTII's

attorney. He asked for the name of Hampshire's attorney so that he could give the name to PTII's attorney. In response to Stepanek's letter providing the requested information, Weder acknowledged the information and wrote:

> Another thought occurs to me, one that may save Hampshire and Highland a considerable amount of cost in legal fees; that is, the possibility that Highland would purchase Hampshire's plant covering business.

> An additional possibility would be that Highland would sell to Hampshire a certain portion of Highland's business, for example, the waxed tissue roll and sheet business.

Am. Comp. Ex. BB.

The defendants' attorney wrote to Hampshire's attorney on October 24, 2001. He stated that Highland was not sure whether it had identified the prototype plant cover that Hampshire originally sent to Highland in 1987 and included photographs of two prototypes. The attorney also stated that both of the prototypes appeared to incorporate concepts covered by patents and configuration marks owned by Southpac and licensed to PTII. In addition, the attorney mentioned that some of the defendants' patents, which related to the devices and methods of manufacture and design of plant covers, might be applicable to Hampshire's manufacturing process. Responding to Stepanek's request in his letter that Highland notify Hampshire if it objected to Hampshire's plans, the attorney answered that "both HSC and PTII

6

do object and disagree that your client is free to manufacture or sell any product that infringes any patent or trademark owned by Southpac or licensed to PTII." Am. Comp. Ex. CC. The letter concluded by noting that PTII might consider licensing Hampshire.

Hampshire did not respond to the attorney's letter. Instead, Hampshire filed its complaint on January 22, 2002, and filed an amended complaint on February 22, 2002. Hampshire seeks a declaratory judgment under § 2201 that Hampshire's products do not infringe the defendants' patents, listed in Exhibits D and F appended to the complaint, and that those patents are invalid. Hampshire also seeks a declaratory judgment that its products do not infringe four listed configuration trademarks, held by the defendants, and that those trademarks are invalid. In addition, Hampshire seeks a declaratory judgment that the defendants have committed patent and trademark misuse. Hampshire also alleges claims of unfair competition under the Lanham Act and New Hampshire law.

## Discussion

The defendants contend that the court lacks subject matter jurisdiction to decide Hampshire's declaratory judgment claims. Hampshire objects, arguing that a sufficient controversy exists to support subject matter jurisdiction and urges the court not to

7

decline subject matter jurisdiction in this case.[2]  The parties focus on the patent claims, assuming that the same analysis would apply to the trademark claims.  Although the defendants contend that jurisdiction is lacking as to the patent and trademark misuse claims, neither side addresses the jurisdictional basis for the patent and trademark misuse claims.

Under both Federal Circuit and First Circuit precedent, it is the plaintiff's burden to prove the existence of subject matter jurisdiction.  See <u>Aversa v. United States</u>, 99 F.3d 1200, 1209 (1st Cir. 1996); <u>Shell Oil Co. v. Amoco Corp.</u>, 970 F.2d 885, 887 (Fed. Cir. 1992).  Since the defendants challenged the subject matter jurisdiction for Hampshire's patent and trademark misuse claims, Hampshire bore the burden of demonstrating jurisdiction.  Having failed to address those claims at all, Hampshire has not carried its burden of showing that subject matter jurisdiction exists for those claims.

The Declaratory Judgment Act, 28 U.S.C. 2201, provides:  "In a case of actual controversy within its jurisdiction, . . . any

---

[2]Hampshire also asserts in one sentence, apparently in support of subject matter jurisdiction, that the declaratory judgment claims are "pertinent to Hampshire Paper's non-declaratory Federal and state law counts under the Lanham Act and New Hampshire unfair competition law, over which this Court already has jurisdiction."  Pl. Mem. at 24.  Hampshire cites no authority in support of that statement.

8

court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Therefore, all actions brought under § 2201 must be based on a case or controversy. See Sallen v. Corinthians Licenciamentos LTDA, 273 F.3d 14, 22 (1st Cir. 2001); GAF Bldg. Materials Corp. v. Elk Corp., 90 F.3d 479, 481 (Fed. Cir. 1996). In addition, an actual controversy must exist through all stages of review. See Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990); see also Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 855 (Fed. Cir. 1999).

The Federal Circuit applies a two-part test to determine whether a case or controversy exists in a declaratory judgment action seeking a declaration of non-infringement or invalidity of patents. See Sandt Tech., Ltd. v. Resco Metal & Plastics Corp., 264 F.3d 1344, 1356 n.4 (Fed. Cir. 2001). "For an actual controversy to exist, '[t]here must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.'" Amana, 172 F.3d at 855 (quoting BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978

(Fed. Cir. 1993).  Similarly, the First Circuit requires a plaintiff seeking a declaratory judgment in a trademark case to show that it "could reasonably have anticipated a claim against it" in order to establish the existence of subject matter jurisdiction.  PHC, Inc., 75 F.3d at 79; see also Sallen, 273 F.3d at 25 ("The reasonable apprehension of suit doctrine exists to cabin declaratory judgment actions where the only controversy surrounds a potential, future lawsuit.") citing Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1058-59 (Fed. Cir. 1995).  Even if a sufficient controversy exists to support jurisdiction under the Declaratory Judgment Act, the court may exercise its discretion to decline jurisdiction in appropriate cases.  See Wilson v. Seven Falls Co., 515 U.S. 277, 287 (1995); DeNovellis v. Shalala, 124 F.3d 298, 313 (1st Cir. 1997); EMC Corp. v. Norand Corp., 89 F.3d 807, 810 (Fed. Cir. 1996).

Because the First Circuit and Federal Circuit standards appear to be substantially similar and the First Circuit has relied on Federal Circuit precedent applicable in patent declaratory judgment actions, the court will use the Federal Circuit standard for both the patent and trademark claims.  In this case, the defendants do not dispute that Hampshire is producing an allegedly infringing product.  Therefore, there is no dispute as to that element of the case or controversy

10

analysis.

The court must next consider whether Hampshire continues to have reasonable apprehension that the defendants will bring a patent or configuration trademark infringement suit as a result of its allegedly infringing product.  See Amana, 172 F.3d at 855. To satisfy this element, a plaintiff must establish that the patentee's conduct "created an objectively reasonable apprehension on the part of the plaintiff that the patentee will initiate suit if the activity in question continues."  EMC Corp., 89 F.3d at 811.  If the patentee has not made an express charge of infringement, the court considers the totality of the circumstances to determine whether an objectively reasonable apprehension of suit exists.  See Shell Oil, 970 F.2d at 888.

Hampshire contends that it has an objectively reasonable apprehension of suit because the defendants have responded to their inquiries with "threats" and have demonstrated their willingness and ability to litigate through their previous suits against Hampshire and others.  The "threats" perceived by Hampshire are primarily in the October 24, 2001, letter from PTII's counsel.  In that letter, counsel stated that the concepts shown in photographs of two prototype plant covers, which had been sent to the defendants during the 1987-1988 dispute, appeared to be covered by some of the defendants' patents and

11

configuration trademarks.  Counsel also stated that Southpac and PTII did object to Hampshire making and selling any product that infringed their patents or trademarks.  The letter concluded by suggesting the possibility of a license.

Counsel's letter is not an explicit charge of infringement or a threat of suit.  Instead, the letter identifies the defendants' potential patent and trademark interests and offers the possibility of negotiating a license, which Hampshire did not answer.  Weder's previous letter suggesting other business solutions also mitigates an apprehension of immediate legal action.  Therefore, the communications by the defendants were not sufficiently threatening to cause a reasonable apprehension of suit.  See EMC Corp., 89 F.3d at 811; Phillips Plastics Corp. v. Kato Hatsujou KK, 57 F.3d 1051, 1053 (Fed. Cir. 1995); Shell Oil, 970 F.2d at 888.

Most importantly, however, the October 24, 2001, letter was not in response to Hampshire's actual product but was based on photographs of two prototype products that were apparently left from the parties' earlier dispute in 1987 and 1988.  In its objection, Hampshire emphasizes that its product is the same as the prior art Jacobson plant cover.  The defendants respond that if Hampshire "intends to manufacture a product identical to the prior art plant covers (shown in the brochure attached to

12

Hampshire's Complaint) and previously manufactured by Jacobsen [sic], there is no issue of patent infringement." Defs. Reply at 2. Based on their court filings, counsel for both sides have represented that Hampshire's product is identical to the Jacobson cover and that such a product does not infringe any of the defendants' patents. Given those representations by counsel, which bind their clients, the defendants are estopped from bringing an infringement action against Hampshire based on a product that is identical to the Jacobson product, as represented in the brochure attached to the complaint. See Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1059 (Fed. Cir. 1995).

Since counsels' representations remove any question of a suit for patent infringement based on Hampshire's current product, it is not necessary to consider the defendants' litigiousness in deciding whether a controversy exists as to the issue of patent infringement. Therefore, no justiciable controversy remains on that issue.

Hampshire contends that the issue of infringement of the configuration trademarks remains even if the patent issue is resolved. As explained above, PTII's counsel's letter of October 24, 2001, is not sufficiently adversarial to cause a reasonable apprehension of suit based on the trademarks. The parties'

13

original dispute in 1987 and 1988 does not appear to involve the configuration trademarks at issue here, which were registered in 1996, 1998, and 2000.  Although a defendant's litigiousness on related issues of intellectual property may be pertinent to deciding whether a reasonable apprehension of suit exists, Hampshire has not shown that the circumstances here are sufficiently threatening to support jurisdiction.  See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 737 (Fed. Cir. 1988).  In addition, even if Hampshire were able to show a justiciable controversy with respect to the trademarks, the court would exercise its discretion to decline subject matter jurisdiction as to the trademark claims to permit the parties to further develop and clarify their relationship and potential issues relating to the trademarks.  See EMC Corp., 89 F.3d at 815.

Therefore, Hampshire has not carried its burden of showing that subject matter jurisdiction exists and should be exercised as to its declaratory judgment claims in Counts I through IV.

## Conclusion

For the foregoing reasons, the defendants' motion to dismiss (document no. 7) is granted as to the plaintiff's declaratory judgment claims in Counts I through IV because the plaintiff has failed to show that subject matter jurisdiction exists as to those claims. The plaintiff's motion for leave to file a surreply is granted and the surreply was considered.

The plaintiff shall file its response **on or before August 9, 2002,** to that part of the defendants' motion moving to dismiss the plaintiff's unfair competition claims for failure to state a claim.

SO ORDERED.

                                                  _____
                                                  Joseph A. DiClerico, Jr.
                                                  United States District Judge

July 18, 2002

cc:  George R. Moore, Esquire
      Paul Cronin, Esquire
      Thomas J. Donovan, Esquire
      Joseph P. Titterington, Esquire