Hoyt Electrical v. ISSPRO          CV-02-582-M    05/30/03   P

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Hoyt Electrical Instrument
Works, Inc.,
    Plaintiff

    v.                                                Civil No. 02-582-M
                                                    Opinion No. 2003 DNH 095**P**
Isspro, Inc.,
    Defendant


**O R D E R**


For over forty years, Hoyt Electrical Instrument Works, Inc. manufactured pyrometers for Isspro, Inc.[1]  In the summer of 2002, that relationship ended after Isspro began manufacturing its own pyrometers.  In November of that year, Isspro's president contacted Hoyt and asserted that Isspro retained a property interest in "a substantial amount of tooling" related to its "proprietary line of pyrometer products."  Complaint, Exhibit A. That tooling was in Hoyt's possession and Isspro demanded its return.  Hoyt asked Isspro to provide it with copies of any

---

[1]    A pyrometer is an instrument designed to measure high temperatures.  It appears that the pyrometers at issue in this case were produced for Isspro for subsequent sale to truck manufacturers such as Kenworth, Freightliner, and Volvo and were designed to measure the temperature of exhaust gases.

documentation that supported its claim, and, saying that it (Hoyt) was aware of no such documentation, denied that any of its tooling or other manufacturing equipment belonged to Isspro.

About a month later, Isspro (acting through legal counsel this time) wrote to Hoyt and again asserted that, based upon "customary industry practice," it, rather than Hoyt, owned "the tooling used to produce the Isspro-designed pyrometers." Complaint, Exhibit B.[2]  Isspro also charged that Hoyt was manufacturing and selling Pyrometers to third parties in violation of Isspro's "proprietary trade dress rights."  Id. This action ensued, in which Hoyt seeks a declaratory judgment that Isspro has no trade dress or other trademark rights in any

_____

[2]     According to Hoyt's president and general manager, Tim Hoyt, "All meters that Hoyt manufactures are produced using tools mounted in diesets.  Each step in the process requires a different tool . . ..  With five exceptions, the one hundred and ninety-nine odd tools that Hoyt used in manufacturing Isspro's pyrometers were the same tools it used to make ammeters, voltmeters, and other products for other customers."  Affidavit of Tim Hoyt in opposition to defendant's motion to dismiss (attached to document no. 9) at para. 7.  Taken literally, then, Isspro's claim to "the tooling used to produce the Isspro-designed pyrometers" amounted to an assertion that it owned virtually every one of Hoyt's manufacturing tools and diesets. Accordingly, Isspro's "insistence that [it] owned these tools, if substantiated, would require Hoyt to cease production of a large percentage of its product line to retool."  Id. at para. 8.

2

of the pyrometers manufactured by Hoyt (count one) and that Isspro has no ownership or other rights in Hoyt's designs, tools, dies, or other components used to manufacture pyrometers (count two).  See 28 U.S.C. § 2201.

Isspro moves to dismiss both counts of Hoyt's complaint, saying the court lacks subject matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1).  Hoyt objects.

## Standard of Review

"When faced with a motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), Fed. R. Civ. P., the party asserting jurisdiction has the burden to establish by competent proof that jurisdiction exists."  Stone v. Dartmouth College, 682 F. Supp. 106, 107 (D.N.H. 1988) (citing O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. 1982)).  See also Hampshire Paper Corp. v. Highland Supply Corp., 2002 DNH 135, 2002 WL 1676285 (D.N.H. July 18, 2002) (noting that while the standard of review for a motion challenging subject matter jurisdiction with respect to patent claims is provided by the Federal Circuit, the standard for determining subject matter jurisdiction as to

3

trademark claims is provided by the First Circuit).  See

generally C. Wright & A. Miller, 5 Federal Practice and Procedure

§ 1350, at 555 (1969 & Supp. 1987)).


And, in determining whether the party asserting jurisdiction

has met its burden, the court "may consider whatever evidence has

been submitted, such as the depositions and exhibits submitted in

[the] case."  Aversa v. United States, 99 F.3d 1200, 1210 (1st

Cir. 1996).  See also Lex Computer & Management Corp. v. Eslinger

& Pelton, P.C., 676 F. Supp. 399, 402 (D.N.H. 1987) (the court

"may consider pleadings, affidavits, and other evidentiary

materials without converting the [Rule 12(b)(1)] motion to

dismiss to a motion for summary judgment.").


## Discussion

In support of its motion to dismiss, Isspro says that there

is no actual case or controversy between the parties and,

therefore, the court may not properly exercise subject matter

jurisdiction under the federal Declaratory Judgment Act.  That

statute provides, in pertinent part, that:

4

> In a case of <u>actual controversy within its jurisdiction</u>, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (emphasis supplied). Isspro claims that because "[n]either of Isspro's two letters to Hoyt contains any explicit threat of litigation," Hoyt could not have had "an objectively reasonable apprehension that Isspro was going to initiate a lawsuit." Defendant's memorandum at 10. And, says Isspro, absent a reasonable apprehension of impending litigation, Hoyt's declaratory judgment action is premature.

Isspro is, at least in part, correct - there must be an actual case or controversy between the parties in order for one of them to properly invoke the Declaratory Judgment Act. As the court of appeals for this circuit has observed, "[a] federal court will not start up the machinery of adjudication to repel an entirely speculative threat." <u>PHC, Inc. v. Pioneer Healthcare, Inc.</u>, 75 F.3d 75, 79 (1st Cir. 1996). Consequently, the question presented by Isspro's motion to dismiss is whether its letters to Hoyt, when viewed in the context of its other conduct toward

5

Hoyt, may properly be viewed as threatening litigation, or whether Hoyt's asserted perception of such a threat was "entirely speculative." See generally Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (1st Cir. 1988).

As noted above, Isspro focuses on the fact that neither of its letters explicitly threatened litigation if Hoyt failed to meet its demands. That focus is, however, too narrow.

> [T]he question under the case law on declaratory judgments is not whether the [defendant] made a specific threat to bring [litigation] or even had such a claim in mind. The federal declaratory judgment statute aims at resolving potential disputes, often commercial in character, that can reasonably be feared by a potential target in light of the other side's conduct.

Pioneer Healthcare, 75 F.3d at 79 (citation omitted). As one legal commentator has observed, for there to be an "actual controversy" between the parties:

> [a] threat of litigation does not have to be said in so many words. It can be expressed in the attitude of defendant as expressed in "circumspect language" in a letter. Even in the absence of direct charges of infringement against plaintiff by defendant, an "actual controversy" can be found if the commercial realities of the situation put plaintiff in a position where it must run a real risk of potential liability if it goes

6

ahead to exercise what it believes are its legal rights in the commercial market.

5 J. McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u>, § 32.51 at 32-101 (4th ed. 2002) (footnotes omitted).

In this case, Isspro's first letter explicitly asserted that it held title to "a substantial amount of tooling related to [its] proprietary line of pyrometer products," which it said "remains in [Hoyt's] possession." Complaint, Exhibit A. It then demanded that the disputed tooling be returned within six weeks. <u>Id.</u> In its second letter, which was drafted by counsel specializing in "patents, trademark, copyrights & litigation," Isspro reiterated its view that it held valid title to the disputed tooling. Complaint, Exhibit B. That letter went on to assert that Hoyt had already infringed upon Isspro's "proprietary trade dress" and warned against any similar conduct in the future.

Isspro has and continues to maintain proprietary rights in the distinctive look and style of its products, and particularly its line of pyrometers. Customers immediately recognize and associate the overall look of Isspro's pyrometers with Isspro. This signature appearance distinguishes Isspro's line of pyrometers from those of its competitors. Isspro's proprietary

7

> trade dress rights have been earned through many years of selling, marketing and promoting its line of pyrometers.
>
> Be advised that if Hoyt Electrical sells any pyrometers having an appearance that is confusingly similar to Isspro's pyrometers, <u>such sales are acts of infringement in violation of Isspro's rights under Federal Trademark and Unfair Competition Laws</u>. We understand that Hoyt Electrical sold some pyrometer models with the Stewart Warner name <u>that are confusingly similar to Isspro's pyrometer models</u>, and Isspro advised Hoyt Electrical of its objection. Isspro <u>did not take any legal action at that time</u> because it understood the transaction to be an isolated instance that did not warrant the expense of litigation. Isspro now is concerned that Hoyt Electrical intends to use the same tooling used to manufacture the Isspro pyrometers to manufacture pyrometer designs having a confusingly similar appearance for one or more of Isspro's competitors.
>
> Isspro still <u>prefers to resolve this matter amicably</u>. To that end, Isspro requests that Hoyt Electrical provide its assurance that it will not manufacture or sell any pyrometers having a confusingly similar appearance to any of Isspro's pyrometer models.

Complaint, Exhibit B (emphasis supplied). While that letter does not <u>explicitly</u> threaten litigation, it undeniably suggests that, should Hoyt fail to accede to Isspro's demands, Isspro would abandon its preference to "resolve this matter amicably," and resort to litigation.

Taken as a whole, the two letters sent by Isspro leave the unmistakable impression that Hoyt faced a choice: turn over the disputed tooling (and thereby stop manufacturing any pyrometers with it) or face a federal trademark and unfair competition suit. Notwithstanding Isspro's claims to the contrary, that implied threat is sufficiently clear and unambiguous to warrant the conclusion that an actual case or controversy exists between the parties. In short, as in Pioneer Healthcare, "[n]o competent lawyer advising [plaintiff] could fail to tell it that, based on the threatening letters and the surrounding circumstances, a [federal] suit was a likely outcome." Pioneer Healthcare, 75 F.3d at 79. See also EMC Corp. v. Norand Corp., 89 F.3d 807, 812 (Fed. Cir. 1996) ("An objective reader of [defendant's] letter could only conclude that [defendant] had already decided [plaintiff] was infringing its patents and that [defendant] intended to file suit unless it could obtain satisfaction without having to sue.").

## Conclusion

Hoyt has carried its burden of establishing that the court has subject matter jurisdiction over its petition for declaratory

9

judgment (i.e., federal question jurisdiction over the trademark and trade dress claims and supplemental and/or diversity jurisdiction over the property claims) and that the court should exercise its discretion to permit Hoyt to pursue its claims under the Declaratory Judgment Act. Simply stated, the issue before the court is whether Isspro's conduct toward Hoyt was sufficiently threatening to warrant the conclusion that an actual case or controversy exists between the parties. It was. Consequently, Isspro's motion to dismiss (document no. 8) is denied.

  **SO ORDERED.**

             _____
             Steven J. McAuliffe
             United States District Judge

May 30, 2003

cc: Jeffrey C. Spear, Esq.
   Christopher Cole, Esq.